BERTHA JANNECK, Respondent, *v.* THE METROPOLITAN LIFE INSURANCE COMPANY, Appellant.

1. LIFE INSURANCE — AMBIGUOUS POLICY CONSTRUED MOST STRONGLY AGAINST INSURER. Where the language of an insurance contract is so ambiguous as to render it susceptible of two interpretations it should be construed most strongly against the insurer, because the latter has prepared the contract and is responsible for the language used.

2. CONSTRUCTION OF AMBIGUOUS CLAUSE AS TO RIGHT TO TERMINATE CONTRACT. A stipulation contained in a policy issued by a life insurance company to the effect that "Should the life insured * * * become so intemperate as to impair his health, * * * said company shall have the unquestioned right, upon becoming satisfied of such fact, to terminate this contract immediately upon the tender to the party in interest of the legal reserve, as hereinbefore described," makes the insurer's right to terminate the contract dependent upon the existence of the fact which is relied upon to terminate it, and gives the insurer no arbitrary right to terminate merely because it has itself become satisfied of the fact.

*Janneck* v. *Met. Life Ins. Co.*, 13 App. Div. 514, affirmed.

(Argued March 15, 1900; decided May 1, 1900.)

APPEAL from a judgment and order of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 30, 1897, affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Euyene Van Voorhis* for appellant. The court erred in denying the defendant's motion for the direction of a verdict. (*Butler* v. *Tucker*, 24 Wend. 447; *Sweet* v. *Morrison*, 116 N. Y. 19; *McAuley* v. *Carter*, 22 Ill. 53; *Downey* v. *O'Donnell*, 86 Ill. 49; *Tyler* v. *Ames*, 6 Lans. 280; *Spring* v. *A. Clock Co.*, 24 Hun, 175; *Hart* v. *Hart*, 22 Barb. 606; *McCarran* v. *McNulty*, 7 Gray, 139; *Zaleski* v. *Clark*, 44 Conn. 218; *Brown* v. *Foster*, 113 Mass. 136.) The refusal of the court to charge that the true construction of the policy is, that if the defendant became satisfied of the fact that the insured had become so intemperate as to impair his health, and acted in good faith, it had a right to cancel the policy, was error. (*Russell* v. *Allerton*, 108 N. Y. 288; *Crawford* v. *M. & E. Pub. Co.*, 9 App. Div. 481.)

*George F. Yeoman* for respondent. The contention that the defendant may cancel the policy simply because it is satisfied that the insured was so intemperate as to impair his health, without reference to whether or not it was a fact that he was so intemperate, is untenable. (*Baley* v. *H. F. Ins. Co.*, 80 N. Y. 21; *Halpin* v. *Ins. Co. of N. A.*, 120 N. Y. 73; *D. S. Boiler Co.* v. *Garden*, 101 N. Y. 387; *Russell* v. *Allerton*, 108 N. Y. 288.)

WERNER, J. This action was brought upon a life insurance policy for one thousand dollars, issued by the defendant on the 5th day of July, 1890, upon the life of one Charles Janneck, and payable to the plaintiff, the beneficiary therein named. The plaintiff recovered a verdict in the trial court,

and the unanimous affirmance in the Appellate Division of the judgment thereon precludes us from looking into the evidence to see whether it supports the verdict.

The only exceptions of sufficient importance to require discussion are those which arise upon the construction of the following clause of said policy : " *Should the life insured be convicted of a felony, or become so intemperate as to impair his health, or to induce delirium tremens, said company shall have the unquestioned right, upon becoming satisfied of such fact, to terminate this contract immediately upon the tender to the party in interest of the legal reserve, as hereinbefore described.*" . The defendant acting upon information from which it became satisfied that the insured had become so intemperate as to impair his health, tendered to the beneficiary the legal reserve which had accrued upon said policy and notified her in writing that the contract was terminated. The plaintiff refused to accept the legal reserve thus tendered or to regard the contract as terminated, and periodically tendered to the defendant the premiums upon such policy as they became due until the death of the insured.

Under these conditions the plaintiff contends, and the courts below have held, that the language of the policy above quoted did not give the defendant the arbitrary right to terminate the contract, and that such right depends upon the existence of the fact which is relied upon to terminate it. It cannot be denied that it was entirely competent for the parties to make a contract which the insurer would have the unquestioned right to terminate at will. Did they make such a contract? The answer to this question must be found in such a construction of the language used as will effectuate the fair intent and meaning of the contract. In considering insurance contracts courts should be guided by two cardinal rules of universal application. The first is, that when the language is clear and unequivocal, the contract should be enforced according to its terms, without regard to the equitable considerations which may be urged in avoidance of it. The second is, that when the language of an insurance contract is so ambiguous as to render

it susceptible of two interpretations, it should be most strongly construed against the insurer, because the latter has prepared the contract and is responsible for the language used. (*Kratzenstein* v. *Western Assur. Co.*, 116 N. Y. 59 ; *Allen* v. *St. Louis Ins. Co.*, 85 N. Y. 473 ; *Herrman* v. *Merchants' Ins. Co.*, 81 N. Y. 184.) With these rules in mind let us analyze the language above referred to :  " Said company shall have the unquestioned right, upon becoming satisfied of *such fact,* to terminate this contract," etc.  What fact ?  .Obviously the fact of conviction of a felony or of such a degree of intemperance on the part of the insured as to impair his health. The sentence begins, " *Should* the life insured be *convicted of a felony,* or *become so intemperate as to impair his health or induce delirium tremens,*" etc.  We think this language assumes the existence of *the fact* as an essential pre-requisite to the exercise of the right reserved.  Upon becoming satisfied of " *such fact* " and not otherwise has the insurer the right to terminate the contract.  Let us suppose that the insurer in a given case should be, or claim to be, satisfied that the insured had been convicted of a felony, and should thereupon terminate the policy.  Suppose further that the insured had not been convicted at all, or had only been convicted of a misdemeanor.  Could the insurer in such a case successfully maintain that it had properly exercised its right to terminate and cancel the contract ?  We think not.  Let us assume that the insured had never even tasted intoxicating liquors, and that the insurer had information from which it became satisfied that the insured had become so intemperate as to impair his health, and thereupon the insurer had proceeded to cancel the policy.  Can it be seriously urged that such cancellation would clearly be supported by the language of this contract ?  In answering this inquiry in the negative, we do not deny the right of an insurance company to make just such a contract as the defendant claims to have made in the present instance.  But insurance contracts, above all others, should be clear and explicit in their terms.  They should not be couched in language as to the construction of

73

which lawyers and courts may honestly differ. In a word, they should be so plain and unambiguous that men of average intelligence who invest in these contracts, may know and understand their meaning and import.

It would have been perfectly simple for the insurer to have said that whenever it becomes satisfied that the insured has been convicted of a felony, or has become so intemperate as *to impair his health, it should have the unquestioned right to* terminate the contract, even though it should transpire that it had acted on mistaken information, or without evidence. But this the insurer did not say. On the contrary, it has used language which strongly indicates an intention to make the existence of the fact the test of the right to cancel the contract. We think the most favorable construction of this language to which the insurer is entitled leaves its true meaning in doubt, and under the rule above adverted to, that doubt should be resolved in favor of the insured. We, therefore, conclude that the defendant's exception to the refusal of the trial court to direct a verdict in its favor, and to the refusal of the court to instruct the jury that the defendant's construction of the contract was the true one, were not well taken, and that the judgment of the court below should, therefore, be affirmed, with costs.

PARKER, Ch. J. (dissenting). The trial court charged the jury: "There is really but one question presented for your consideration upon the issues, and that is whether by the terms of the policy the insured during his lifetime became so intemperate as to impair his health," and, further, that the burden was on the defendant company of establishing the affirmative of the proposition. This view is about to receive the approval of this court, and as I am unable to unite in it my reasons for dissenting will be briefly given.

The policy of insurance contains the following provision : " Should the life insured be convicted of a felony, or become so intemperate as to impair his health or induce delirium tremens, said company shall have the unquestioned right,

upon becoming satisfied of such fact, to terminate this con-
tract immediately upon the tender to the party in interest of
the legal reserve as hereinbefore described." The answer
alleged, and the defendant proved, that it caused the habits of
Charles Janneck to be investigated in October, 1893; that
the report of the results of such investigation satisfied the
defendant, on October 28, 1893, that the assured had become
so intemperate as to impair his health, and on October 31,
1893, it caused to be tendered to the party in interest the
amount of the legal reserve pursuant to the foregoing provis-
ion of the policy, and gave notice that it had terminated the
policy. The assured died in August, 1894. It is not ques-
tioned, of course, that it was competent for the parties to the
contract to agree that intemperance which should be so great
as to impair the health of the insured should be treated as a
sufficient cause for the termination of the policy, that the
company should have the right to determine that question,
and that its determination, if made in good faith, should be
final. But while it is conceded that the parties were compe-
tent to make such a contract, and that one of them at least
attempted to do so, it is said that they did not succeed. In
other words, that while the language employed in the provis-
ion quoted tends in that direction, it is not by it so clearly
and emphatically expressed as to call upon the court to give
such a construction to it, and the necessary result is that the
provision becomes meaningless and serves no purpose what-
ever. It seems to me quite clear that the parties agreed that
should the life of the insured become so intemperate as to
impair his health the company should have the right — yes, "the
unquestioned right," provided it first became "satisfied of such
fact" — to do what? "To terminate this contract." When?
"Immediately." On what condition? "Upon the tender of
the legal reserve." It seems to me that a reasonable construc-
tion of this language requires us to hold that the parties did
provide a method by which the defendant company could ter-
minate the contract in the contingency provided for, which
could only be brought into existence by the conduct of the

insured. The defendant having offered evidence tending to show that such a contingency arose and that after an investigation it became satisfied that the fact was that the insured had become so intemperate as to impair his health, and having thereupon canceled the policy and tendered back the amount of the legal reserve, under the evidence in this case there was but one question for the jury, and that was whether the defendant in what it did acted in good faith. The learned counsel for the defendant asked the court so to rule and to submit that question as the only question to the jury, but his request was refused, and the exception taken would lead to a new trial if the contract should receive the construction I have suggested.

BARTLETT, MARTIN, VANN and CULLEN, JJ., concur with WERNER, J., for affirmance; GRAY, J., concurs with PARKER, Ch. J.

Judgment affirmed.