of the instrument they agreed upon, it is sufficient for the purpose of conveying title and of entitling plaintiff to payment. If, through mistake of law or otherwise, it is insufficient to convey the title, then the defendants should have alleged the facts, and demanded by way of counterclaim a further conveyance, which the court could, if necessary, decree as a condition of compelling payment.

I fail to see any merit in the position taken by appellants. Their testatrix had a good record title, and they seek to defeat it by evidence dehors the record, from which they claim, in effect, that she was a mortgagee in possession. They do not show that they obtained possession in that right, and the plaintiff shows quite clearly that the possession was given pursuant to the agreement to purchase. But even with the evidence that the deed was to be considered as a mortgage only in case the decedent did not wish to complete the purchase, still the contention of the appellants should not be sustained. The plaintiff, by electing to give the decedent possession pursuant to her parol election to purchase, and to demand the balance of the purchase price, and by bringing this action therefor, which is an irrevocable election, would be forever estopped from asserting any right of redemption in the premises.

The appellants insist that the plaintiff has an equity of redemption in the premises, which she never asserted, and does not now claim, and is estopped from claiming. It therefore becomes unnecessary to decide whether the doctrine of the cases of Mooney v. Byrne, 163 N. Y. 86, 57 N. E. 163, or Hughes v. Harlam, 166 N. Y. 427, 60 N. E. 22, and kindred cases, is applicable to the case at bar, or whether the defeasance or equity of redemption which was created by parol could be released by parol, so that the decedent in any event obtained a complete title on or about the 28th day of March, 1895, when she made her election to purchase, or whether the fact that the express purpose of having the instrument in the form of a deed was to have it serve and stand as a conveyance of the title, without the execution of any further grant, in the event that the grantee so elected within the time specified, distinguishes the case from those last cited, and renders the doctrine "once a mortgage, always a mortgage," inapplicable. These would be interesting questions, but their consideration is, I think, unnecessary. The learned court conducted the trial without error prejudicial to the appellants. The letter, Exhibit H, was not shown to have been authorized by plaintiff, and was therefore properly excluded.

I am of opinion, therefore, that the judgment and order should be affirmed.

---

(42 Misc. Rep. 290.)

BRACHER v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.

(Supreme Court, Trial Term, New York County. December, 1903.)

1. LIFE INSURANCE—PREMIUMS UNPAID—DEDUCTION.

A life insurance policy issued August 10, 1898, required payment of premiums in advance, and the payment of like premiums on the 9th day of February and August in every year, and provided that, in case future installments were necessary to complete the full year's premium at the

time of the death of the insured, the amount due should be deducted from
the amount of the claim. *Held*, that the company was entitled, where the
·assured died November 16, 1902, having paid premiums to August 9, 1902,
to deduct from the face of the policy the payment due February 9, 1903.

Action by Evelina Bracher against the Equitable Life Assurance
Society of the United States. Judgment for plaintiff.

James A. Hudson, for plaintiff.

Alexander & Green (Charles W. Pierson, of counsel), for defend-
ant.

ROGERS, J. On the 10th day of August, 1898, the defendant is-
sued its policy of insurance, whereby it insured the life of George
S. Bracher for the sum of $10,000, the loss payable to Evelina Bracher,
if living. The consideration was the payment, in advance, of $383.90,
and the like amount on or before the 9th day of February and Au-
gust in each year thereafter during the lifetime of the assured. He
died November 16, 1902, having paid said premiums as they fell
due down to and including the 9th day of August of that year. On
the 6th of December thereafter the proofs of death required by the
policy were delivered to the defendant. Defendant admits its liability
to pay the said $10,000, but claims there should be deducted therefrom
the premium, which, had the assured lived, would have accrued Feb-
ruary 9, 1903. Whether this deduction can be made is the only ques-
tion to be determined. The language of the policy essential to an
understanding of the controversy is as follows:

The defendant "on receipt of satisfactory proofs of the death of the said as-
sured, providing this policy is then in force, agrees to pay ten thousand dollars.
* * * to Evelina Bracher. * * * This assurance is granted in consid-
eration of the written and printed application for this policy, which is hereby
made a part of this contract; and of the payment in advance of *Three Hundred*
·*and Eighty-three and* 90/100 *Dollars*, and of the payment of *Three Hundred*
*and Eighty-three and* 90/100 *Dollars*, on or before the *Ninth* day of *February*
and *August* in every year thereafter during the lifetime of the assured.

"THE LOANS, SURRENDER VALUES, BONUS GUARANTEE, OPTIONS, PRIVILEGES.
AND CONDITIONS
stated on the second and third pages hereof form a part of this contract as.
fully as if recited at length over the signatures hereto affixed."

The quotations here made are from the first page or face of the
policy, under which are the signatures of the president and registrar.
On the third page, under the heading, "Facility in Making Pay-
ments" is the following:

"All premiums are due in the City of New York, but at the pleasure of the
Society suitable persons may be authorized to receive such payments at other
places on or before the due dates, but only on production of the Society's re-
ceipt therefor, signed by its Secretary and countersigned by the authorized
person to whom the payment is made. Although the contract is based on the
receipt of premiums annually in advance, the premium may be made payable
in semi-annual or quarterly installments in advance, but in such case any
future installments which, at maturity of the contract, are necessary to com-
plete the full year's premium shall be deducted from the amount of the claim."

The words underscored are written; the remainder is printed.

A contract of insurance is to be interpreted so as to give effect to the
intent of the parties as indicated by the language employed, and the

words used are to be taken in their ordinary and proper sense, unless they appear to have been otherwise used. Savage v. Howard Insurance Co., 52 N. Y. 502, 504, 11 Am. Rep. 741; Schoonmaker v. Hoyt, 148 N. Y. 425, 431, 42 N. E. 1059. The written must prevail over the printed part. Harper v. New York City Ins. Co., 22 N. Y. 442; Kratzenstein v. Western Assurance Co., 116 N. Y. 54, 57, 22 N. E. 221, 5 L. R. A. 799. But where the policy "contains a promise to pay a certain specified sum, and this is followed by obscure clauses, difficult to be understood, or requiring expert knowledge for their comprehension, they will not be construed as intended to impair the promise, but should receive the construction the insurer had reason to suppose was put upon them by the insured. To effect an impairment of the original obligation, the language of the subsequent clauses must be clear and unambiguous." Wadsworth v. Jewelers' & T. Co. of New York, 132 N. Y. 540, 29 N. E. 1104. In case of doubt or uncertainty as to the meaning of the policy, it must be resolved in favor of the assured, for the reason that it was the society who prepared it; and, if any doubt exists as to the meaning of the terms employed, the society is responsible for it, it being its own language. Janneck v. Met. Life Ins. Co., 162 N. Y. 574, 57 N. E. 182; Marshall v. Commercial Travelers' M. A. Assn., 170 N. Y. 434, 63 N. E. 446. "The reason of the rule that the language of an instrument is to be construed against the person who proposes it rather than against the person who is invited to accept it is that men are supposed to take care of themselves, and that he who chooses the words by which a right is given, ought to be held to the strict interpretation of them, rather than he who only accepts them." Gillet v. Bank of America, 160 N. Y. 549, 555, 55 N. E. 292. On the face of the policy in question the words to which allusion has already been made, and by which the assured is referred to the second and third pages, are in bold type, and as follows: "The Loans, Surrender Values, Bonus Guarantee, Options, Privileges and Conditions." Turning to the second page there is found (1) a heading "Table of Loans and of Surrender Values"; another (2) "Bonus"; then (3) "Options"; leaving for the third page, as a heading, only "Privileges and Conditions." Under these words are nine subheadings, the first three being as follows: (1) "Incontestability"; (2) "Freedom of Travel and Occupation"; (3) "Facility in Making Payments." As already observed, the first sentence of this provides for the method by which payment of premiums may be made, and then, in the same paragraph, follows another sentence, quite foreign to the title under which the defendant claims the deduction. At the outset is the promise to pay $10,000 on proof of death, "providing this policy is then in force." There is no other condition. The promise, on its fulfillment, becomes absolute. Olmstead v. Keyes, 85 N. Y. 593, 598. Would the casual, or even careful, reader of the first page of the policy, notwithstanding he is there referred to the "Privileges and Conditions," to be found on the third page, be likely to understand that the "Privileges and Conditions" and "Facility in Making Payments" thus given him would scale down his policy the amount of a half year's premium? If not, and the defendant was cognizant of the fact, the assured would not be bound, because "when the language used in a policy may be understood in more senses

than one, it is to be understood in the sense in which the insurer had reason to suppose it was understood by the assured." Per Earl, J., Dilleber v. Home Life Ins. Co., 69 N. Y. 256, 263, 25 Am. Rep. 182. Returning to the face of the policy, no reference is made to "premiums annually in advance," to "semiannual or quarterly installments," nor to "full year's premium"—terms employed in the "Facility" paragraph. Nevertheless, it is stated in the paragraph mentioned, in words not to be misunderstood, that the premium is based on the receipt of an annual premium in advance. This must be paid, viz., $767.80, to require the insurer to pay the full sum of $10,000; that result is attained by deducting the installment payable February 9, 1903. If I am correct in these views, the plaintiff is not entitled to recover beyond the amount tendered and paid.

Judgment is directed accordingly, with costs to the defendant from April 28, 1903.

Upon the trial the defendant, by its witness, Mr. Van Cise, gave certain evidence, subject to objection, regarding the manner in which life insurance calculations are made, and the custom of life insurance companies. The rights of the parties here are fixed by contract, and may not be varied by mathematical calculations, conducted by the defendant alone or by other insurance companies, particularly when knowledge of the custom was not brought home to the assured. The evidence thus objected to is stricken out, with exception to defendant.

Judgment accordingly.