Desmond, J.
 

 We must construe and apply this “ cooperation clause ” found in the automobile liability insurance policy issued by plaintiff to defendant David Diamond (and found in millions of other policies issued throughout the United States by plaintiff and other insurance companies):
 
 “
 
 Assistance and Cooperation of the Insured. The insured shall cooperate with the company and, upon the company’s request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any
 
 *597
 
 obligation or incur any expense other than for such immediate medical and surgical relief to others as may be imperative at the time of accident. ’ ’
 

 In this declaratory judgment suit it has been adjudged that the policy was breached and voided by the insured. That breach, it has been held herein, was the refusal of the named insured when sued in a wrongful death action to verify a cross complaint which would have brought in as a cross defendant the insured’s mother who was driving the insured car at the time of the accident in question. That declaratory judgment should, we hold, be reversed for these reasons: first, that the assured, defendant David Diamond, was not required by the policy to verify the cross complaint or otherwise implead his mother; and, second, that even if the policy could be read so to require, David Diamond did all that was needful under the circumstances here related.
 

 The material facts are undisputed. On a day in 1951 during the term of the policy the automobile was being operated by Fannie Diamond, the insured’s mother, with the consent of the insured who was not present. Adolph Diamond, husband of Fannie Diamond and father of the insured, was a passenger. The automobile collided with a car driven by defendant Covelli. Adolph Diamond suffered fatal injuries. Fannie Diamond and one Weiss as executors of Adolph Diamond’s will brought the wrongful death action above referred to against the named assured David Diamond. The insurer retained an attorney to represent David Diamond and the latter verified an answer prepared by that attorney. The attorney then tendered to David Diamond for signature and verification a proposed cross complaint to bring into the action as a defendant Mrs. Diamond, individually, as driver of the Diamond .car. There followed some correspondence between David Diamond and his personal attorney on one side and the insurer on the other. Diamond refused to sign the third-party complaint, arguing that the policy required the insurer to defend not only the owner but any driver of the insured car, and that, accordingly, the owner as one insured should not be required to sue another insured, the driver. The insurer, however, not only continued to insist that the pleading be signed and sworn to" but declined to explain its reasons for such insistence. David Diamond through his personal attorney suggested to the insurer that the dispute be
 
 *598
 
 submitted to the Appellate Division for determination on an agreed statement of facts (Civ. Prac. Act, § 546). The insurer rejected the offer, declared the policy forfeited because of alleged non-co-operation, and then brought this action which prayed for and resulted in a declaratory judgment that the insurer is not obligated to defend the death action or to pay any judgment rendered against David Diamond therein. The Appellate Division affirmed, and we granted leave to appeal to this court.
 

 This record shows no breach by David Diamond of the co-operation clause. There is not even an ambiguity in the policy required to be resolved in favor of the insured and against the company
 
 (Hartol Prods. Corp.
 
 v.
 
 Prudential Ins. Co.,
 
 290 N. Y. 44, 49-51). The only language in the co-operation clause that by any possible stretching could cover this situation is that which requires the insured to co-operate ‘
 
 ‘
 
 in the conduct of suits ’ ’. But that must mean suits of the kind mentioned in many earlier parts of the policy, that is, suits against the named insured. There is no suggestion in the policy that the ‘ ‘ conduct ” of cross suits against anyone was within contemplation of the co-operation clause. Any doubt about this should be removed by examination of the “ Subrogation” clause which appears in the policy immediately after the co-operation clause. The subrogation clause reads as follows: “ Subrogation. In the event of any payment under this policy, the company shall be subrogated to all the insured’s rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.” Thus, the policy says and means that no right of the insurer over against a person other than the named insured comes into existence except ‘1 In the ¡event of any payment ” under the policy. Till that time comes, the insurer has no right of suit by subrogation or otherwise and till that time there can be no duty of the insured to co-operate in any such additional suit.- On the commencement of the original suit, this insurer’s obligation to defend its named insured therein was complete and absolute and its performance of that obligation could not validly be conditioned on any joinder of the named insured in another action against anyone. The purpose of the co-operation clause is to constrain the assured
 
 *599
 
 to co-operate in good faith with the insurance company in the
 
 defense
 
 of claims
 
 (Wenig
 
 v.
 
 Glens Falls Ind. Co.,
 
 294 N. Y. 195, 201). That purpose was fully met here.
 

 When David Diamond was sued, plaintiff was bound to defend him. This policy by express terms covers the named owner as an insured and separately covers any other person lawfully driving the vehicle
 
 (Wenig
 
 v.
 
 Glens Falls Ind. Co.,
 
 294 N. Y. 195, 201, supra;
 
 Morgan
 
 v.
 
 Greater N. Y. Taxpayers Mut. Ins. Assn.,
 
 305 N. Y. 243, 249). The liability of the nondriving owner is imposed by statute (Vehicle and Traffic Law, § 59) while the liability of the actual operator flows from his personal wrongdoing
 
 (Sarine
 
 v.
 
 American Lumbermen's Mut. Cas. Co.,
 
 258 App. Div. 653, 654, citing
 
 Goochee
 
 v.
 
 Wagner,
 
 257 N. Y. 344, 347; Vehicle and Traffic Law, § 59). Since the company’s covenant to defend the owner was unconditional, it had to perform, promptly and without the imposition on its assured of conditions and burdens not mentioned in the policy.
 

 We are not withdrawing from the construction just above given to the policy when we say, additionally, that on the particular facts here David Diamond cannot be held guilty of any failure to co-operate, whatever the policy may mean. To quote a writer in the Nebraska Law Review (1954-1955, Vol. 34, p. 257): the insured “must cooperate with the company to present any fair and reasonable defense that is available, including the duty of verifying pleadings, although he is not required to
 
 cooperate in presenting a sham defense or executing instruments he believes erroneous”
 
 (emphasis ours; see
 
 Coleman
 
 v.
 
 New Amsterdam Cas. Co.,
 
 247 N. Y. 271, 276). To amount to a breach, the attitude of the assured must be one “ of willful and avowed obstruction ”
 
 (Coleman
 
 opinion,
 
 supra,
 
 p. 276). How could such a charge be made against this assured? His inquiries and the later inquiries by his attorney as to the purpose of the interpleader, his statement that his mother was a coassured and should not be cross-sued, brought from his insurer nothing but a peremptory demand that the questioned pleading be signed. David Diamond even went to the unusual length of proposing that the dispute be submitted to the Appellate Division (through assured’s own counsel and at his own expense). Unless policyholders are to be at the mercy of the companies on some “ theirs not to reason why ” theory, “ mere puppet [s] in the hands of the insurer ”
 
 (Royal Ind. Co.
 
 v.
 
 Morris,
 
 
 *600
 
 37 F. 2d 90, 92), this assured went even beyond the necessities in his effort to co-operate. In another kind of fact situation, where reasonable men could disagree (see
 
 Albert
 
 v.
 
 Public Service Mut. Cas. Ins. Corp.,
 
 292 N. Y. 633;
 
 Standard Acc. Ins. Co.
 
 v.
 
 Winget,
 
 197 F. 2d 97, 101-103, and
 
 Coleman
 
 opinion in this court, 247 N. Y. 271,
 
 supra;
 
 see
 
 Porter
 
 v.
 
 Traders' Ins. Co.,
 
 164 N. Y. 504, 509), co-operation may he a jury issue. But the insurer has the burden of proof on such an issue (8 Appleman on Insurance Law and Practice, § 4787, and cases cited) and this plaintiff certainly failed to carry that burden.
 

 Since we are holding that this policy does not mandate the signing of a cross complaint, we do not reach any question as to the meaning or application of subdivision 3 of section 167 of the Insurance Law as to “ interspouse ” liabilities. We do mention in passing that David Diamond’s liability, if any, to his father’s executors was certainly not that of one spouse to another.
 

 We note that this same co-operation clause has been in standard use throughout the United States for many years (see Donovan, “ National Standard Provisions ”, 1949 Report of Amer. Bar Assn. Section on Insurance Law, p. 103; Insurance Policy Annotations, issued in 1941 by same section, Yol. 1, p. 102
 
 et seq.,
 
 and supplement, p. 53
 
 et seq.-,
 
 Sawyer on Automobile Liability Provisions, 1936, p. 145). .So far as appears, this is the first recorded instance of a contention by an insurer that co-operation ‘1 in the conduct of suits ’ ’ contemplates the bringing of cross suits in the name of the insured. In his authoritative work
 
 {supra)
 
 Sawyer assumes (bottom of p. 145) that the “suits” intended are “suits against the insured”. If the companies are going to demand any more than that, their policies should say so. “ *
 
 *
 
 * insurance contracts, above all others * * * should not be couched in language as to the construction of which lawyers and courts may honestly differ ”
 
 (Janneck
 
 v.
 
 Metropolitan Life Ins. Co.,
 
 162 N. Y. 574, 577).
 

 Still another ground is available for holding that the
 
 ‘ ‘
 
 suits ’ ’ in the conduct of which the policy required David Diamond to co-operate were suits against him, not suits brought by him. Most of the States in which this same policy form is universal do not permit (as New York does) the filing of cross complaints against persons liable over to the original defendant (see
 
 *601
 
 Journal of American Judicature Soc., Aug., 1954, p. 57; Clark on Code Pleading [2d ed.], p. 408; Twelfth Annual Eeport of N. Y. Judicial Council, 1946, p. 230). This fact alone would make it unlikely that
 
 “
 
 suits ” include cross suits.
 

 The judgment of the Appellant Division and that of Special Term should be reversed and the complaint dismissed, with costs in all courts.
 

 Froessel, J.
 

 (for reversal and remission). The preliminary question before us on this appeal, in an action for declaratory judgment, is whether plaintiff insurance company may require its named insured, defendant here, to verify a third-party complaint as against the driver of his car, in a wrongful death action brought against him.
 

 The instant liability insurance contract expressly requires co-operation, among other things, in “ the conduct of suits ”. That phrase, it seems clear to us, includes
 
 cross
 
 claims between active and passive tort-feasors already joined as defendants in an action. So too, we believe, does it encompass the usual type of third-party action.
 

 It would be well to note that this is not the case where an insured is asked to verify a complaint against
 
 any
 
 third party. In most instances such third parties would probably be mere joint tort-feasors, and the courts, of their own accord, would not grant such applications simply because of the well-settled rule that one joint tort-feasor may not bring in another.
 

 Here, however, the named insured, not even a passenger in his own car, is only vicariously liable at most, and his negligence, if any, is thus only passive. Under these circumstances, a passive tort-feasor is entitled to bring in another who has actively committed the negligence with which he — here the named insured-—-is vicariously charged.
 

 This, under ordinary circumstances, would be in the named insured’s own best interest, where, as here, the amount claimed for damages
 
 exceeds
 
 the amount of insurance. Furthermore, it is in the public interest as well, for it avoids a multiplicity of actions, saves time and expense, and is in accord with both legislative and judicial policy to dispose of related litigation in a single action, as provided for in section 193-a of the Civil Practice Act.
 

 That it, in a sense, amounts to a defense favoring the insurance company is of no consequence here, for that company, and all
 
 *602
 
 other insurers, are entitled to whatever defenses, counterclaims or claims over the insurance policy and the law bestow upon, or allow to, their named insureds. Indeed, it is the duty of an insurance company to avail itself of every proper defense — for if it fails to do so it might well find itself paying out numerous claims not authorized by law. This, of course, would be contrary to the best interests of the company’s insureds and the public generally, for it would, in further contravention of public policy, tend to require insurance rates higher than otherwise necessary.
 

 Clearly a defendant insured would normally commence a third-party action such as that here in question for
 
 his own
 
 protection. The difficulty here, however, is that this third party happens to be defendant’s own mother. Were the driver of his car anyone else, there probably would have been no hesitancy whatever on his part to verify the proffered complaint. While he has the right to be generous, he may not do so to the prejudice of his insurer.
 

 Under the general terms of the policy, and as driver of his car, defendant’s mother would ordinarily be within the purview of the contract provisions defining those who are there ‘1 insured ’ ’. However, in this case she is not, by virtue of subdivision 3 of section 167 of the Insurance Law, which provides as follows: “ 3. No policy or contract shall be deemed to insure against any liability of an insured because of death of or injuries to his or her spouse or because of injury to, or destruction of property of his or her spouse unless express provision relating specifically thereto is included in the policy. ’ ’ This statute was designed to protect insurance companies from potentially collusive attempts to obtain indemnification by spouses suing and defending
 
 inter se
 
 where, as in the instant case, the insurer has not specifically agreed to such coverage (see generally
 
 Standard Acc. Ins. Co.
 
 v.
 
 Newman,
 
 2 Misc 2d 348, affd. 268 App. Div. 967, motion for leave to appeal denied 294 N. Y. 646;
 
 Fuchs
 
 v.
 
 London & Lancashire Ind. Co. of America,
 
 258 App. Div. 603). Under its provisions, interspouse suits are excluded from coverage by insurers within this State in the absence of express provisions in the policy to the contrary.
 

 Here, defendant’s mother, representing her deceased husband’s estate, is actually making a claim through her son and against herself as the actively negligent driver of the car in which her
 
 *603
 
 husband met his death. That, we believe, is by statute valid ground for denying her coverage of the named insured’s policy — absent a provision therein to the contrary — even where, as here, the inter spouse suit is indirect rather than direct.
 
 Westchester Lighting Co.
 
 v.
 
 Westchester County Small Estates Corp.
 
 (278 N. Y. 175) is not controlling, for that case was decided under an entirely different statute. Thus no refusal to verify this third-party complaint on the ground of possible
 
 “
 
 circuity of action ’’may be justified under the insured’s co-operation clause.
 

 Since this question as to the effect of subdivision 3 of section 167 of the Insurance Law upon indirect interspouse suits has never been before this court, defendant was in doubt as to the reasonableness of the requirement that he verify a third-party complaint seeking recovery over against one who was, he believed, covered by the very same policy that shielded him. It was, at best, uncertain to him what our ruling would be. In that state of mind, he suggested to the insurer that an agreed statement of facts be first submitted to the Appellate Division for a determination of his obligation under the policy.
 

 The insurance company, however, rejected this offer, and instead declared a forfeiture of defendant’s policy for non-co-operation. Nevertheless, only two weeks after declaring the forfeiture, insurer itself in effect followed that very suggestion by undertaking this declaratory judgment action — much like the submission of agreed facts proposed by insured, though perhaps a somewhat slower process. It obviously did so simply for its own protection—although it first attempted to forfeit defendant’s rights under the policy — recognizing that if it were found wrong under the law, it would forfeit nothing but could then merely return to defend its insured in the principal action, with complete safety to itself. Finally, no prejudice to the insurer was occasioned, for, in fact, the original negligence action was already subject to the delay of a crowded calendar, and was not likely to reach the trial stage for a considerable period after issue was joined.
 

 Under the peculiar circumstances of this case, there was, on the part of defendant, no such ‘ ‘ willful and avowed obstruction ’ ’ as we found in
 
 Coleman
 
 v.
 
 New Amsterdam Cas. Co.
 
 (247 N. Y. 271, 276, per Cardozo, Ch. J.) but a clear willingness to co-operate. By way of contrast, it was the insurer who at first demonstrated a total lack of desire on its part to co-operate. Under
 
 *604
 
 these particular facts, we think there has heretofore been no failure of reasonable co-operation by defendant under his policy.
 

 We do not mean to say, however, that an insured may in any case refuse to co-operate with his insurer until the courts have ruled that he is required to do so. Where, as here, the responsibilities, liabilities and duties of the parties to an insurance contract are more than colorably in doubt, i.e., where there exists a truly bona fide controversy as to the reasonableness of the insurer’s demand and an absence of “willful and avowed obstruction ”, we may not hold as a matter of law that there has been a refusal to co-operate.
 

 The judgment below should be reversed, with costs, and the matter remitted to Special Term for further proceeding's not inconsistent with this opinion.
 

 Conway, Ch. J., Dye and Fuld, JJ., concur with Desmond, J.; Fboessel, J., votes for reversal and remission in a separate opinion in which Van Voobhis and Btjbke, JJ., concur.
 

 Judgments reversed, etc.