Germaine CYR, as Administratrix of
the Estate of Leo Cyr, Plaintiff-
Appellee,

v.

AMERICAN GUARANTEE and LIABIL-
ITY INSURANCE COMPANY,
Defendant-Appellant.

No. 125, Docket 24081.

United States Court of Appeals
Second Circuit.

Argued Jan. 18, 1957.

Decided Feb. 25, 1957.

Samuel L. Scholer, New York City, of counsel), for plaintiff-appellee.

Carter & Conboy, Albany, N. Y. (Edward L. Bookstein, Albany, N. Y., of counsel), for defendant-appellant.

Before MEDINA and HINCKS, Circuit Judges, and LEIBELL, District Judge.

LEIBELL, District Judge.

This is an appeal from a judgment entered on the verdict of a jury. Plaintiff Cyr, Administratrix, sued under Section 167 of the New York Insurance Law, McK.Consol.Laws, c. 28 to recover on a liability policy issued by the defendant insurance company to Germain J. Pelletier as the insured.

Pelletier was driving an automobile on January 10, 1952, in which Leo Cyr, a friend, was a passenger on the front seat. At a railroad crossing in the Village of Remsen, County of Oneida, New York, about 18 miles north of Utica, the automobile skidded on an icy road and the right side of the auto struck the second of two diesel engines of a train and was dragged some 50 feet. Cyr suffered face injuries and a fractured spinal vertebra.

Cyr sued Pelletier and the railroad. The railroad company settled. The insurance company undertook the defense of the action for Pelletier. The case, after a number of adjournments, came on for trial in the Federal Court at Utica on January 6, 1953. Pelletier, who had been subpoenaed by the insurance company's investigator did not appear in court. The company's lawyers thereupon abandoned the defense. A jury was drawn on January 7th and the attorney for Cyr proceeded to take an inquest. The jury reported a verdict of $27,000. The insurance company's policy was for $10,000.00.

Pelletier was a lumberjack and apparently had nothing. Sometime after the judgment in his favor, Cyr died, and his wife, as Administratrix, sued the insurance company on its $10,000 bond. The company defended on the ground

Goldbas & Goldbas, Utica, N. Y. (Salvador J. Capecelatro, Utica, N. Y., and

that Pelletier had failed to cooperate in the defense of the Cyr action for personal injuries. In this action the jury brought in a verdict for the amount of the bond. This appeal is from the judgment entered on that verdict plus interest and costs.

The defendant appellant claims that the trial judge erred in his rulings on the admissibility of certain evidence; in certain parts of his charge to the jury; and in denying defendant's motion for a directed verdict.

## I

In the course of the trial the judge permitted plaintiff to offer evidence as to the extent of the investigation the insurance company made before the trial of the Cyr personal injury action. This appears to have been offered to bolster plaintiff's contention in this case that the insurance company paid little attention to the Cyr personal injury action because they felt it could not be defended successfully, and because they had in mind doing just what they did, namely, not defending against the Cyr claim and when Cyr later sued under the New York State Insurance Law, Section 167, subds. 1(b) and (5), interposing as a defense Pelletier's alleged non-cooperation in the defense of the personal injury action. The evidence was relevant and material on the question of good faith, in view of the insurance company's special defense of non-cooperation. Roth v. National Automobile Mut. Casualty Co., 202 App.Div. 667, 195 N.Y.S. 865; American Surety Co. of New York v. Diamond, 1 N.Y.2d 594, 154 N.Y.S.2d 918, 136 N.E.2d 876; Traders & General Insurance Co. v. Rudco Oil & Gas Co., 10 Cir., 129 F.2d 621, 142 A.L.R. 799; Coleman v. New Amsterdam Casualty Co., 247 N.Y. 271, 160 N.E. 367, 72 A.L.R. 1443. Its admission did not harm the defendant. It showed that the insurance company had made investigations prior to the Cyr personal injuries trial. In his charge to the jury the trial judge eliminated the question of "good faith" on the part of the insurance company.

Two other rulings of the judge during the trial are cited as erroneous. The appellant insurance company claims that the court should not have permitted Pelletier to testify as to how he happened to be on the road near Speculator, when Sabatello served him with the subpoena on December 29, 1952. He testified that a Mr. Wood had told him that "he got a phone call from Amsterdam to meet this gentleman (Sabatello) at the tar road. So I did."

The appellant argues that what Wood (his employer) said to Pelletier was hearsay and was prejudicial since it served to bolster Pelletier's and impeach Sabatello's testimony about the circumstances surrounding service of the subpoena. Sabatello had testified that he himself had had a conversation with Mr. Wood and had learned where Pelletier was working in the north woods; that he, Sabatello, had tramped through the woods for an hour without finding Pelletier; that he returned to the road, got into his car and while driving away came upon Pelletier walking on the road.

Pelletier's testimony explained his presence on the road by reason of what Wood had told him. The testimony of Pelletier as to his conversation with Wood was admissible. 6 Wigmore, Evidence, §§ 1788–1790.

Another alleged erroneous ruling of the trial judge is based on his refusal to receive in evidence the insurance company's "major file" on the accident and the Cyr suit. Plaintiff's attorney had not objected. The "major file" is about 1½ inches thick and contains scores of memos, reports of investigators and letters, most of it clearly inadmissible if offered separately, and some of it not too helpful to the insurance company. The investigators themselves testified for the company and some of the file memoranda were used in the course of their testimony. The "major file," in and of itself, was not admissible as evidence. The trial judge properly excluded it.

## II

The trial judge in his charge to the jury eliminated from their consideration the question of "conspiracy" or of "good faith" on the part of the company "as any separate issue of fact." The charge states:

"We have also had the use of the word 'good faith' and perhaps 'conspiracy'. Ladies and gentlemen, I am going to eliminate that as any separate issue of fact. It all goes back again to what the company did or didn't do in connection with its obligation under the terms of this contract, and any evidence received in that connection is received and limited entirely as indicating an attitude one way or the other upon either the part of the insurance company or upon the part of Pelletier."

Defendant's attorney excepted, on the ground that "conspiracy" is "no issue at all." That is splitting hairs. The judge's charge on this point was clear and fair.

Another exception taken to the charge is recorded as follows:

"Mr. Bookstein: I respectfully except to the Court's charge in substance that the defendant's position has been that Pelletier merely failed to attend the hearing, having been requested. In connection—

"The Court: Let me just see— and upon the company's request shall attend hearings and trials. All right."

What the court had said in its charge was as follows:

"Well, now, let's see what does that obligation mean? The obligation is pretty well described by the language of the policy itself, and I don't know that any explanation of it would assist you, and perhaps it might confuse rather than help. The insured shall cooperate with the company upon the company's request, and upon the company's request shall attend hearings and trials.

"Now, what does cooperate mean? Cooperate means just what the words imply, to operate with, to work with, that was the obligation of Pelletier under this policy."

The company's answer, pleading the special defense of Pelletier's failure to cooperate stated [p. 152]:

"That the said Germain J. Pelletier failed to cooperate with this defendant under the terms of said policy and ignored all letters from the said company directing him to appear at the trial of said action and in that he failed to appear for the trial of said action even after he had been served with a subpoena to do so. That the said Germain J. Pelletier violated and breached the terms of his policy of insurance with this defendant by refusing and failing to cooperate under the terms thereof as set forth above."

As to the letters, the proof showed that Pelletier was a lumberjack and worked in the woods above Speculator and at other points in the Adirondacks. He got his mail irregularly. Pelletier had appeared for an examination before trial on notice from Cyr's attorneys in the personal injury action. He was questioned by Cyr's attorney. The attorneys for the insurance company were present, but asked no questions. On December 29, 1952, the insurance company's investigator served Pelletier with a subpoena to be present at the Cyr personal injury trial on January 6, 1953 at Utica. That was the last notice he received to be present at the trial.

We need not decide whether the insurance company would have been entitled to a directed verdict in its favor in this suit of Cyr's Administratrix on the company's bond, if there had been no explanation of Pelletier's failure to appear at the Cyr trial. An explanation was offered by plaintiff's attorney. It was given through Pelletier himself. He testified that when he was served with the subpoena near Speculator by Mr. Sabatello (the insurance company's investigator) on the Monday before New Year's

(December 29, 1952), he was given $12.-65 and he was told he had to come to Utica the next day; that he protested about the amount of money, asking "How do you expect me to go to Utica (60 miles distant) with this kind of money" (no train or bus went to Utica); that Sabatello said to him "as far as they are concerned I didn't have to go to court, they didn't care if I went or not, that was up to me, so he says"; that he told Sabatello that he would get in touch with Pratt (Pelletier's own lawyer) and call him up. Pelletier further testified that the next day (December 30th) he hitch-hiked to Utica and called up Mr. Pratt, who could not meet him. He said to Mr. Pratt "I ain't going to bother with this court business, then" and Pratt said "We don't care if you show up or not, that's up to you." [What Pratt said the court struck out on the insurance company's objection.] Pelletier testified that he then "took the bus and went to Syracuse to look for a job; I didn't have any money; I was broke."

The judge, in his charge, referred to the service of the subpoena on Pelletier and what the respective contentions were as to what happened and what was said. The judge stated that it was plaintiff's contention that the conversation with Sabatello, as testified to by Pelletier, was "an excuse for non-attendance" and that "the action of the insurance company itself shows that Pelletier was misled in the matter of the necessity of the attendance at the trial."

The judge then stated:

"Now the defendant while not specifically denying the last end of this conversation, as I recollect it, says that they delivered the subpoena to him, told him to be in Utica at the trial under the terms of the subpoena, and that all that can be reasonably expected of them was done."

The court then left it to the jury to determine whether Pelletier did fail to cooperate.

Shortly prior to that part of the charge, the judge had referred to the service of the subpoena and to plaintiff's contention that as the time for trial approached this man was easily located after a day or two's effort, and that word was brought to him of the pending trial. The judge then said:

"Let me switch just a moment, now. The defendant contends, yes, that was true, not only did they notify him of the trial but they served a subpoena upon him and gave him what we call a subpoena fee. Now, whether or not that subpoena was any good we don't have to determine because it is just one of those things that happen or were done by one of the parties to this litigation which bears upon their attitude."

At the end of the charge, one of the exceptions taken by the defendant's attorney was expressed in this way:

"Mr. Bookstein: In connection with the Court's summary of the events of December 29, 1952, the Court referred to the last part of the conversation as related by Mr. Pelletier, and defendant excepts to the Court's charge that the defendant did not specifically deny the last end of that conversation.

"The Court: All right.

"Mr. Bookstein: The defendant respectfully excepts to the portion of the Court's charge which said the subpoena was just one of the things that happened."

The judge was right in saying that the last part of Sabatello's conversation with Pelletier to the effect that "so far as they are concerned, I didn't have to go to court, they didn't care if I went or not, that was up to me, so he says," had not been specifically denied. Sabatello was not recalled to the stand to deny it.

The other part of the exception to the part of the charge where the court said "the subpoena was just one of the things that happened" has no merit, as is apparent when it is read in its context in the charge.

Finally the defendant's lawyer called the judge's attention to "request to charge No. 15." The court stated that he was sure he had charged No. 15 and he read the request into the record: "There is implicit in the policy or contract between Pelletier and the defendant the contemplated availability of Pelletier." The typewritten request to charge submitted by the defendant used the word "explicit," which the judge properly changed to "implicit" in his own handwriting. The judge correctly charged:

> "The defendant, upon whom is the affirmative in this connection contends that Pelletier failed to keep himself available and that is implicit in the contract of insurance that the insured be available to perform the obligations thereof."

This disposes of all the exceptions to the charge that merit any discussion.

### III

From the above references to the evidence in the discussion of the objections and exceptions, it is apparent that there was a clear-cut issue for the jury, as to whether Pelletier breached the contract of insurance, by failing to cooperate with the company in the defense of Cyr's suit for personal injuries, in not appearing at the trial after having been served with a subpoena to do so. Hoff v. St. Paul-Mercury Indemnity Co., 2 Cir., 74 F.2d 689. The court properly denied defendant's motion for a directed verdict. Seltzer v. Indemnity Ins. Co., 252 N.Y. 330, 169 N.E. 403.

The duty of an insured to cooperate with the insurance company in the defense of a suit brought by a third party against the insured has been discussed by the appellate courts in cases where an injured judgment creditor later sued the insurance company under Section 167 of the New York Insurance Law. One of the latest cases is American Surety Co. of New York v. Diamond, 1 N.Y.2d 594, 154 N.Y.S.2d 918, 136 N.E. 2d 876, in which the New York Court of Appeals construed a cooperation clause as not including the filing of a cross-complaint by the insured against the injured occupant (the insured's mother). The court held that the "policy does not mandate the signing of a cross complaint." In the course of the majority opinion of the court in that case, Judge Desmond, stated, 1 N.Y.2d at page 600, 154 N.Y.S.2d at page 923, 136 N.E.2d at page 880:

> "In another kind of fact situation, where reasonable men could disagree, see Albert v. Public Service Mut. Cas. Ins. Corp., 292 N.Y. 633, 55 N.E.2d 507; Standard Acc. Ins. Co. of Detroit, Mich. v. Winget, 9 Cir., 197 F.2d 97, 101–103; and Coleman opinion in this court, [Coleman v. New Amsterdam Cas. Co.] 247 N.Y. 271, 160 N.E. 367, [72 A. L.R. 1443], supra; see Porter v. Traders' Ins. Co., 164 N.Y. 504, 509, 58 N.E. 641, 642, 52 L.R.A. 424, cooperation may be a jury issue. But the insurer has the burden of proof on such an issue (8 Appleman on Insurance Law and Practice, § 4787, and cases cited) and this plaintiff certainly failed to carry that burden."

Each case must be considered in the light of its particular facts and circumstances and the jury has the responsibility of determining the issues of fact raised by conflicting testimony. In the case at bar, there was substantial evidence which, if the jury believed it, would support their verdict.

Judge Brennan's charge was clear, complete and instructive. It stripped the case of non-essentials and left to the jury, with proper explanations, the sole issue—whether Pelletier failed to cooperate with the insurance company in the defense of Cyr's action for personal injuries, and thereby breached the policy of insurance on which Cyr's Administra-

trix sues in this action. The judge described that as "the crux of the case." He repeated later: "This is a simple question of cooperation in attendance at the trial." The judgment entered on the jury's verdict for the plaintiff is affirmed.