Hymajst Koknt, J.
This case was tried by the court without a jury.
The plaintiffs, Jacob and Ethel Sincoff, the named assured, seek damages from the defendant insurer, on a policy of insurance known as a Personal Property Floater. The damage was to furnishings consisting of broadloom carpeting, tapestry and furniture, caused by carpet beetles. The plaintiffs duly filed a proof of loss as required by the policy. The answer admits the issuance of the policy but denies coverage.
On May 25, 1956, the defendant issued its Personal Property Floater policy No. MP-20P-105040-R, to the plaintiffs for the period from July 20,1956 to July 20,1959, and covered (1) “ Personal Property owned, used or worn by the persons in whose name this policy is issued, hereinafter called the insured, and members of the insured’s family of the same household, while in all situations, except as hereinafter provided.” (2) It insured: ‘ ‘ All risks of loss of or damage to property covered, except as hereinafter provided.”
“ The policy does not insure damages to property caused by deterioration, moth, vermin, and inherent vice. See paragraph 6 (g).”
During the period that the policy was in effect personal property as heretofore set forth was damaged by carpet beetles. There is no dispute that there was such damage. The defendant contends that it was caused by the larvae, and the plaintiff contends that it was caused by the adult beetle. However, this is immaterial to the determination of the issue herein.
The sole issue in this case concerns itself with the meaning of the exclusion clause and specifically the meaning of a single word therein, to wit: “vermin”. The defendant asserts that the carpet beetle is “ vermin ” and therefore the damage caused is excluded under the policy.
This case was ably tried by the attorneys on both sides. It was evident that they had spent much time in researching this unusual subject. Expert witnesses testified for both sides. *532 There was an agreement that the damage caused in this case was by the “ varied carpet beetle ”. Plaintiff’s expert maintained that this beetle causes damage in two stages, in the larval and in the fully developed stage. The defendant’s expert maintained that damage to household furnishings was caused only in the larval stage.
The expert for the plaintiff maintained that beetles are not vermin and the defendant’s expert held to the contrary. It is the court’s province in this case to construe the exclusion clause, and determine if the word ‘ ‘ vermin ’ ’ includes ‘ ‘ varied carpet beetles ” in the light of the average man’s thinking.
The carpet beetle is one of a group of coleopterous insects or beetles that very frequently infest carpets, from which it gets its name. It also infests any kind of wool, fur, feathers, cotton material, especially if stained with animal material. It may also infest dead animals, birds and other things. There are two generally recognized types or groups: the black carpet beetle and the buffalo carpet beetle, of which there are five or six species, one of which is the varied carpet beetle which is known by the scientific name atherenus verbasci, which is the particular beetle with which we are dealing. The beetle, including the varied carpet beetle, of course, is a member of the insect kingdom and there are reportedly approximately 350,000 different kinds of beetles.
The word “vermin” is more or less a popular colloquial expression, and not a scientific term. It may mean one thing to one person and another thing to another. In no dictionary where the word “ vermin ” was defined was there any reference to a “ beetle ” being classified as “vermin”. The large Webster’s New International Dictionary of the English language ([2d ed.], 1956, Unabridged) defines the word vermin as “noun — 1 any noxious, mischievous or disgusting animal; 2 specific: such an animal, or esp. such animals collectively, when of small size, of common occurrence, and difficult to control. Various insects as flies, lice, bedbugs, fleas, etc., various mammals, as rats, mice, weasels, etc., and sometimes such birds as hawks and owls, are classed as vermin.”
The Encyclopedia Americana (Vol. 28 [1955 ed.], pp. 16-17) defines “ vermin ” as: “A term comparable to ‘ weed ’ signifying small animals obnoxious in some way to human plans and operations. It has been applied to rats, mice, gophers, weasels, and other mammals; such insects as fleas and lice and at times to hawks, owls and other birds.”
The expert for the defendant stated that the varied carpet beetle was also called a buffalo beetle, a buffalo bug or a buffalo *533 moth. The United States Department of Agriculture, in its Home & Garden Bulletin No. 24, which is in evidence, refers to the carpet beetle or buffalo moth. The defendant’s expert, however, stated in response to a question that a ‘ ‘ beetle is not a moth”. Also we find in Compton’s Picture Encyclopedia (Vol. 2 [1959 ed.], p. 119): “that the buffalo moth is not a moth at all”. This case, therefore, is not concerned with the exclusion in the policy which has reference to “ moths ”.
Nowhere in any of the reference books and encyclopedias did the court find the beetle described or classified as ‘ ‘ vermin ’ ’. Besearch has not disclosed any reported case in any jurisdiction in the United States wherein there was a determination that a beetle could be characterized as “ vermin ”.
An insurance contract should, if its terms will permit, be construed to effectuate the intention of the parties as interpreted by the average person or common man. Since the insurer chooses the verbiage of the contract, if there are any provisions therein that are susceptible of more than one meaning such provisions must be construed most favorably to the insured.
The word “vermin”, as heretofore pointed out, is a nonscientific term. Experts who are well versed in etymology disagree as to the meaning of the word “ vermin ”. The several dictionary definitions contain varying connotations but none specifically refers to the word “ beetle ”.
By what criteria, then, is the average man to be guided in construing the word “ vermin ” as set forth in the policy? If the word is capable of more than one interpretation, the doubt, if any, must be resolved in the insured’s favor. To define the carpet beetle as outside the pale of the classification of the word ‘ ‘ vermin ’ ’ would not be giving that word' an unnatural or forced interpretation. In Fidelity & Cas. Co. v. Groth (53 N. Y. S. 2d 623, affd. 270 App. Div. 976, affd. 296 N. Y. 788) the court states at page 627: “ The well settled rule that if a policy of insurance is written in such language as to be doubtful or uncertain in its meaning all ambiguity must be resolved in favor of the policy holder and against the company has been uniformly followed and variously expressed by the courts of this state as follows:
‘ ‘ Where a provision in an insurance policy is ambiguous, where without giving to the language used a forced or unnatural meaning, a construction in favor of the insured may fairly be adopted, to that construction he is entitled. Silverstein v. Commercial Casualty Ins. Co., 237 N. Y. 391 * * *.
“ Where the language of an insurance contract is so ambiguous as to render it susceptible to two interpretations, it should *534 be most strongly construed against the insurer, because the latter has prepared the contract and is responsible for the language used. Insurance contracts, above all others, should be clear and explicit in their terms. They should not be couched in language as to the construction of which lawyers and courts may honestly differ. In a word, they should be so plain and unambiguous that men of average intelligence who invest in these contracts may know and understand their meaning and import. Jannick v. Metropolitan Life Ins. Co., 162 N. Y. 574, 57 N. E. 182.”
(To the same effect, Hartol Prods. Corp. v. Prudential Ins. Co., 290 N. Y. 44, 49.)
The defendant prepared the policy. It was incumbent upon it to make that policy free of doubt of what it intended in the exclusion clause. The word ‘ ‘ vermin ’ ’ being susceptible of various meanings, if the company intended to exclude liability for damage caused by carpet beetles it could and should have so stated in a specific manner.
In McGrail v. Equitable Life Assur. Soc. (292 N. Y. 419) the court said at pages 424^-425: “Rules for the construction of contracts of insurance do not differ from those to be applied to the construction of other contracts. "When the terms used are clear and unambiguous, they are generally to be taken and understood in their plain, ordinary and proper sense (Johnson v. Travelers Insurance Co., 269 N. Y. 401, 408). But resort to a literal construction may not be had where the result would be to thwart the obvious and clearly expressed purpose which the parties intended to accomplish or where such a construction would lead to an obvious absurdity (Silverstein v. Metropolitan Life Ins. Co., 254 N. Y. 81) or place one party at the mercy of the other (Russell et al. v. Allerton, 108 N. Y. 288, 292). Such meaning must be given to the terms used as would be ascribed to them by the average man in applying for insurance and reading the language of the policy at the time it was written (Lewis v. Ocean Acc. & G. Corp., 224 N. Y. 18, 21; Silverstein v. Metropolitan Life Ins. Co., supra). Consistently followed in this State has been the rule that the policy must be construed reasonably and that it must be given a practical construction, not thereby with the result that there is a revision of the policy or an increase of the risk and thus an extension of the resulting liability, but for the purpose of determining what the parties must reasonably have intended by its terms when the policy was written by defendant and accepted by the plaintiff”. (Cases cited.)
The courts must be guided by what was the reasonable expectation and purpose of the ordinary and average man when he *535 entered into this insurance contract with the insurer. The following language as set forth in Morgan v. Greater N. Y. Taxpayers Mut. Ins. Assn. (305 N. Y. 243, 248) is a reliable authority on this point: “ ‘ Our guide must be the reasonable expectation and purpose of the ordinary business man when making an insurance contract * * * ’ (Burr v. Commercial Travelers Mut. Accident Assn., 295 N. Y. 294, 301). £ The language employed in the contract of insurance must be given its ordinary meaning, such as the average policyholder of ordinary intelligence, as well as the insurer, would attach to it.’ (Abrams v. Great Amer. Ins. Co., 269 N. Y. 90, 92.) We believe that the meaning which we attribute to the exclusory provision is the only proper one. If defendant intended the exclusory provision to mean more than that, i.e., to mean that there is no obligation to indemnify an assured for liability resulting from an assault committed by another assured, it should have made that intention known.” Therefore, the court in construing this contract of insurance and the exclusions enumerated in paragraph 6 (g), and giving the word ££ vermin ” such meaning as would be ascribed to it by the average man in applying for insurance and reading the language of the policy holds that the word ££ vermin ” does not include carpet beetles.
There was a stipulation between the attorneys that if the court found that the plaintiff had made out a cause of action and sustained the burden of proof, in that event, the damages would be the sum of $2,000, thus eliminating the need of expert testimony with regard to the extent of damage.
These are the material findings of fact after trial:
That on May 25, 1956, the defendant issued its Personal Property Floater Policy No. MP-20P-105040-B, for the period from July 20, 1956 to July 20, 1959, inclusive; that the policy covered all the personal property owned, used or worn by the persons in whose name this policy was issued and insured all risks of loss of or damage to, property covered, except as hereinafter provided; that paragraph 6 (g) contained an exception from liability for damages caused by moth, vermin and inherent vice; that the plaintiffs duly filed proof of loss as required by the policy; that the term or word £‘vermin” as used in the policy would not be given a meaning to include carpet beetles by the average man in applying for insurance and reading the language of the policy at the time it was written; that the plaintiffs have sustained the burden of proof by a fair preponderance of the credible evidence; that the plaintiffs have sustained damages in the sum of $2,000, as stipulated.
*536 CONCLUSIONS OF LAW
The plaintiffs are entitled to judgment against the defendant for the sum of $2,000 with interest from the date of rejection of the claim, the 2nd day of January, 1957. All motions on which decision was reserved are denied with appropriate exceptions.