William Mertbns, J.
By stipulation of the parties, the specific issue raised by the defendant Hertz’ affirmative defense, of lack of permissive use of the vehicle owned by it, was tried by the court without a jury. All other issues as to liability and damages were reserved for further disposition in this court or *753 through MVAIC procedures dependent upon the determination of this affirmative defense.
The facts as to the use of the Hertz vehicle are clear. On February 1, 1968 Hertz rented the truck to Carmine’s Fruit & Vegetable Store in Brooklyn through Vincent Pergola, one of the two principals in said business. The rental document is in evidence as plaintiff’s Exhibit 2. At about 7 o’clock that evening Pergola, who was then at his home in Patehogue, called his store and told his employee, the codefendant Steven Messina who was still at the store, to make a final delivery of the day to a store in Manhattan. Messina made the delivery in Manhattan and then drove the truck back to Brooklyn, intending, because it was raining, to go to his home and to bring the truck back to the store the next morning. On the way home Messina was in an accident with a vehicle driven by the plaintiff. Messina was not a licensed driver. He apparently panicked after the collision, left the scene of the accident and after driving a few blocks further, parked the truck and went home. The next morning he could not find the truck. Later that morning, he and Pergola learned from a police call that the truck had been impounded by the police. The record further shows that Pergola did not know that Messina was not a licensed driver and that Messina did not reveal that fact to him. Apparently Pergola simply assumed that Messina had a license when he agreed to make the requested delivery.
The Hertz affirmative defense, denying operation and control of the vehicle, rests on the contention that in turning the truck over to its employee, the lessee violated alleged conditions of the rental agreement which would forbid operation by an unlicensed driver and by an employee of the lessee except in the course of the employee’s regular and usual employment, and that thus Hertz should not be held to have given permission to Messina to operate the truck. It is uncontradicted that Messina was an unlicensed driver. It is also clear that without knowing this fact the lessee did in fact give permission to its employee, Messina, to drive the truck to make a delivery for the lessee at a late hour of the day when the employee might reasonably be expected to use the truck to go home after completion of the delivery and to bring it back to the place of business the next day. This was a rental truck and there is no indication in the record that the lessee had any facilities to store the truck overnight or that it had any concern as to where Messina might park the truck overnight. The record does not disclose any instructions by Pergola to his employee either to turn the truck back to Hertz that night or to return it to the immedi *754 ate vicinity of the store. The court finds that Messina’s use of the truck at the time of the accident was with the permission of his employer and within the regular course of his employment.
The conditions relied upon hy Hertz are found on what is actually the back of the rental document, although the print rather deceitfully designates it as “page 1” (see Exhibit 2). The entire back side of the rental document is filled with ‘ ‘ terms and conditions ” which are so extensive, so compactly printed and in such very small type as almost to defy readability. There is a reference to such terms and conditions on the other side of the document where the date, rental price and other pertinent data are set forth and the customer signs directly below such reference. However, to believe that the customer has actually read the terms and conditions on the reverse side would be to believe the unbelievable. There is no evidence that such terms and conditions were brought to the customer’s attention when he signed at the car rental counter.
Thus there is a serious question as to whether the terms and conditions on the back of the rental document can be held to be part of the rental agreement. Can Hertz on any theory, contractual or otherwise, limit the responsibility of the owner in view of the statutory presumption of permissive use created by subdivision 1 of section 388 of the Vehicle and Traffic Law? Since the court finds that the use of the vehicle by Messina was by permission of the lessee in the regular course of his employment, the only pertinent “ term ” or “ condition ” in the instant case is that forbidding the lessee to allow an unlicensed driver to operate the rented truck.
Subdivision 1 of section 388 of the Vehicle and Traffic Law states: ‘ ‘ Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.”
This statutory provision creates a strong (although rebut-table) presumption that a vehicle is being driven with the permission of the owner (Reyes v. Sternberg, 27 A D 2d 828; Brindley v. Krizsan, 18 A D 2d 971). In the instant case it is clear that the defendant owner gave permission to drive to its lessee who in turn gave permission to its employee. The fact that the ultimate driver was unlicensed cannot in and of itself break the rdiflln of presumptive permission created by the statute. It is obvious that, if an owner directly gives permission to an unlicensed driver, it may be held liable under this statute. Its lia *755 bility is no less when its permittee gives permission to an unlicensed driver. (Brindley v. Krizsan, supra). In the Brindley case the court found that the owner had vested his friend with general control of the car without limitation of authority. In the instant case an attempted limitation of authority or permission is sought to be established through the terms and conditions printed on the back of the rental document.
Was there in fact an agreement between the owner and lessee embodying the terms and conditions set forth on the back of the rental document? Was there the concurrence of intention or mutuality of assent between owner and lessee necessary to bind the lessee to these terms and conditions (see Egan v. Kollsman Instrument Corp., 21 N Y 2d 160; Lisi v. Alitalia-Linee Aeree Italiane, S.p.A., 370 F. 2d 508, affd. 390 U. S. 455; Willard Van Dyke Prods. v. Eastman Kodak Co., 12 N Y 2d 301; ThompsonStarrett Co. v. Otis Elevator Co., 271 N. Y. 36; Joseph v. Atlantic Basin Iron Works, 132 N. Y. S. 2d 671, affd. 285 App. Div. 1147) ?
As indicated above the text of the terms and conditions virtually defies reading. The small print coupled with its extent and positioning reflects a rather artful effort to obscure the attempted limitations on the permissive use granted to its lessee. (See Egan v. Kollsman Instrument Corp., supra, p. 169, for another court’s view of a similarly obscured effort to avoid liability.)
The court finds that there is lacking here the necessary mutuality of assent to make the terms and conditions on the back of the rental document enforceable against the lessee. Thus there is no contractual basis for rebutting the statutory presumption of permissive use. Parenthetically, it is doubtful that any contractual arrangements between the lessor and lessee even if established so as to give a cause of action to the owner against the lessee for a violation of the agreement would be binding on third-party members of the public in the light of the statute.
Nor can there be found in the record any basis independent of contract principles to destroy the presumption. The ‘ ‘ terms and conditions ” printed on the back of the rental agreement cannot be utilized by Hertz to create a unilateral definition of the extent of its permission so as to preclude an action against it by an injured member of the public. We are not dealing here with the case of a vehicle stolen from the lessee or the owner. We have here the case of a vehicle driven by one to whom in fact permission to drive was given by the owner’s lessee. It may be argued that the owner did not intend that its vehicle be placed in the hands of an unlicensed driver since it presumably would not directly rent to an unlicensed driver and thus that *756 its grant of permissive use is impliedly limited to a chain of licensed drivers. The rejection of this argument, however, is implicit in the court’s decision in the Brindley case (supra). In that case also it could be argued with some plausibility that the owner did not intend that his friend would place the vehicle in the hands of an unlicensed driver. The court’s decision in the Brindley case in effect denied the validity of such a defensive claim and clearly represents a statement of public policy to hold an owner liable under subdivision 1 of section 388 where the vehicle through a chain of consents is finally driven by an unlicensed driver. This statutory provision reflects an overpowering public interest to give an injured member of the public a right of action against the owner of a vehicle who is primarily responsible for placing it on the highway. It should certainly apply to owners engaged in the car rental business who clearly make no investigation of the capacity or sense of responsibility of the lessee other than the production of a driver’s license or a deposit at the rental counter. The tremendous growth in the number of cars on the highways and in the car rental business which greatly adds to the number requires that application of subdivision 1 of section 388 so as to achieve its intended purpose; namely, to make owners who put vehicles on the highways responsible for accidents caused by negligence in the operation of those vehicles. The legalistic artifices often used to define the scope of the permission granted by the owner must yield to the realities of our modern automotive society and the extensive car rental business which it has developed. The Brindley case has pointed the way. It is a fair application of the Brindley decision to hold that an owner engaged in the ear rental business within the context of subdivision 1 of section 388 gives its lessee general control of the vehicle without limitation of authority, and I so find.
The affirmative defense of lack of permissive use pleaded by the defendant Hertz is accordingly dismissed. The trial of the remaining issues of liability and damages shall proceed at Trial Term, Part 8, before the undersigned and a jury on November 23,1970,