**Andrew WHITE and Elizabeth White, Plaintiffs,**

**v.**

**Samuel SMITH et al., Defendants.**

**Civ. A. No. 1875–72.**

United States District Court,
D. New Jersey.

July 21, 1975.

---

Archer, Greiner & Read, by Joseph H. Kenney, Haddonfield, N.J., for plaintiffs.

Martin, Crawshaw & Mayfield, for Chrysler Leasing Corp. and Avis Rent-A-Car, by G. Paul Crawshaw, Haddonfield, N.J.

## OPINION

### ON THE MOTION BY DEFENDANTS, CHRYSLER LEASING CORPORA-TION and AVIS RENT–A–CAR, FOR SUMMARY JUDGMENT.

GERRY, District Judge.

A two vehicle collision on the Atlantic City Expressway provides the factual framework within which this Court must address a conflict of laws question. By

way of defendants' motion for summary judgment, the issue presently before this Court for adjudication is whether the law of New York, New Jersey or Pennsylvania is applicable in determining the liability of a vehicle owner for the negligence of the lessee operator. Prior to beginning a choice of law analysis, however, a brief examination of the facts is in order.

Samuel Smith, the defendant is a resident of Michigan. Smith traveled from Detroit to New York City, where he rented a 1972 two-door sedan from defendant, Avis Rent-A-Car, a Delaware Corporation which does business in New York. Smith agreed to return the vehicle to New York City by July 5, 1972. The automobile was licensed and registered in New York by its title owner, defendant Chrysler Leasing Corporation, also a Delaware Corporation doing business in New York. The vehicle had previously been leased for a long term by Chrysler to Avis for use in the latter's business of renting cars to the general public.

On July 4, 1972, Smith drove his rented automobile to Philadelphia to visit some relatives. From there, Smith and some companions set out for the Jersey shore via the Atlantic City Expressway. While traveling eastbound, one of Smith's companions apparently realized he had left his hat in an Expressway restaurant. Smith, intending to retrieve the hat, executed a "U" turn, and proceeded west, still driving in the eastbound lane.

At this point, plaintiffs, Andrew and Elizabeth White, residents of Pennsylvania, were driving their Pennsylvania registered automobile eastward toward Atlantic City and the approaching Smith sedan. The White vehicle collided head-on with the Smith/Avis vehicle on the Expressway in Hamilton Township, New Jersey. This lawsuit for damages is the result of that untimely incident.

The Whites sued Smith, Chrysler and Avis in the District of New Jersey, site of the accident. Jurisdiction is based upon diversity of citizenship and the amount in controversy exceeds $10,000.

Presently before the Court are the motions of Chrysler and Avis for summary judgment. The Court's disposition of these motions will depend upon which state's law is applicable on the issue of an automobile owner's liability for the driver's negligence. Defendants contend that either New Jersey or Pennsylvania law must be applied, in which case they urge that neither Avis nor Chrysler could be liable as a matter of law based on the record presently before this Court. The Whites, however, have tendered the law of New York, under which they argue that the negligence of an operator must be imputed to the vehicle's owner.[1]

I

At the outset, it is undisputed that in a diversity case, a federal court must apply the forum state's choice of law rules. *Klaxton Company v. Stentor Electric Manufacturing Company, Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In determining whether the law of New York, New Jersey or Pennsylvania should thus be applied on the issue of an automobile owner's liability, the New Jersey choice of law rules are binding upon this Court.

It is equally clear that New Jersey has long since abandoned the mechanical lex loci delicti or "vested right" approach to conflicts of laws, e. g., *Harber v. Graham*, 105 N.J.L. 213, 143 A. 340 (E. & A. 1928), substituting in its stead the modern "governmental interest" analysis. *Heavner v. Uniroyal, Inc.*, 63 N.J. 130, 305 A.2d 412 (1973); *Rose v. Port of New York Authority*, 61 N.J. 129, 293 A.2d 371 (1972); *Pfau v. Trent Aluminum Co.*, 55 N.J. 511, 263 A.2d 129

---

1. None of the parties have urged the application of the law of Michigan, the state of defendant Smith's residence. Since no party has placed Michigan law in issue, it is not considered by this Court.

(1970); *Mellk v. Sarahson*, 49 N.J. 226, 229 A.2d 625 (1967).[2]

Under the lex loci delicti approach, the law of the place of the tort automatically controlled the case. In determining which jurisdiction's law should apply, the Court simply decided where the situs of the accident was and applied the law of that state. Uniformity, certainty, predictability of result, as well as ease of application, were advantages of this rule.

■ The more flexible governmental interest approach, however, eschews the mechanical application of strict rules, and recognizes that one state may have an interest in having its law applied to the rights and liabilities of parties to an event which occurred in another state. *Mellk v. Sarahson*, 49 N.J. 226, 229, 229 A.2d 625 (1967). Indeed, the foreign state's interest in applying its law may outweigh the interest of the forum state on a particular issue. It is not unusual for the forum to demonstrate little or no interest in a given issue at all. *Henry v. Richardson-Merrell, Inc.*, 508 F.2d 28 (3rd Cir. 1975); *Heavner v. Uniroyal, Inc., supra*. The function of the Court is thus to apply the law of the state which has the greatest interest in having its law govern the particular matter in issue.

■■ In order to determine which state has the greatest interest in the application of its own law, each issue must be analyzed separately. Governmental interest is determined by closely scrutinizing the underlying interests and public policy of the forum law vis-a-vis the interests and policies of other states whose laws are at variance with forum law, but whose laws, nevertheless, are at least arguably applicable. *Breslin v. Liberty Mutual Insurance Co.*, 125 N.

J.Super. 320, 310 A.2d 527 (L.Div.1973). If a strong state policy or interest will be neither fostered by applying that state's law, nor frustrated by the failure to apply it, it is highly unlikely that that state has any interest whatsoever in blanketing that particular issue with its law.

■■ In determining where a state's interests lie, the Court must consider the significant facts or contacts which relate an issue to that state. Such contacts are considered, however, only to the extent that they are relevant to the purposes of the particular laws in conflict. For example, the situs of an accident will certainly be relevant on the issue of the standard of care, since a state clearly has an interest in regulating conduct within its borders. *Pfau v. Trent Aluminum Co., supra; Tooker v. Lopez*, 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (1969). On the issue of the nature of the remedy, however, the situs may be less relevant, especially if another state has a predominant interest in regulating the relationship between the parties. *Miller v. Miller*, 22 N.Y.2d 12, 19, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968).

■ It is not enough merely to apply the law of the jurisdiction which numerically has the most contacts with a particular issue, for such an exercise would be as mechanical and unjust as an automatic application of the lex loci delicti. On the contrary, it is the quality, not the quantity, of a state's contact with an issue which ultimately determines whether its law should be applied. *Mullane v. Stavola*, 101 N.J.Super. 184, 189, 243 A.2d 842 (L.Div.1968).

■ In addition to considering the public policy of the forum state and the contact of the parties, and of the accident, with the respective jurisdictions

---

2. New Jersey courts have followed the lead of New York and California in adopting the governmental interest approach to conflict of laws, citing the following cases with approval: *Reich v. Purcell*, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967); *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E. 2d 279 (1963); *Macey v. Rozbicki*, 18 N.Y. 2d 289, 274 N.Y.S.2d 591, 221 N.E.2d 380 (1966); *Miller v. Miller*, 22 N.Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968); *Tooker v. Lopez*, 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (1969).

whose laws have been tendered, the judicial as well as social consequences of the selection of an applicable law merit consideration. Along these lines, this Court is especially mindful of the oft-stated judicial objective of discouraging forum shopping by litigants. *Breslin v. Liberty Mutual Insurance Co.,* 125 N.J.Super. 320, 326, 310 A.2d 527 (L.Div.1973).

The governmental interest analysis, providing as it does a progressive, fluid alternative to the ritualistic application of lex loci delicti, by its very nature does not lend itself to a brief encapsulated rule of operation. New York Court of Appeals Judge Burke, however, enunciated a concise and succinct statement of guidelines, worthy of repetition, within which such an analysis should be conducted:

> It is necessary first to isolate the issue, next to identify the policies embraced in the laws in conflict, and finally to examine the contacts of the respective jurisdictions to ascertain which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied.

*Dym v. Gordon,* 16 N.Y.2d 120, 124, 262 N.Y.S.2d 463, 466, 209 N.E.2d 792, 794 (1965).

## II

As has been previously noted, the only issue *sub judice* is the extent of a vehicle owner's liability for the negligence of one to whom the vehicle is leased.

New Jersey and Pennsylvania adhere to the common law with respect to an owner's liability. Generally, ownership alone is not sufficient in those states to impose liability upon the owner for the negligent operation of his vehicle by another.[3] In order to recover damages from an owner, it must be shown that the driver of the vehicle was on the owner's business as his agent, that the driver was an employee within the course of his employment, or that some other master-servant relationship existed between owner and driver.[4]

Under the common law in those states, an automobile owner who loans or rents his vehicle to another is not liable for the bailee's negligence unless there is proof that the owner was himself negligent in renting to a reckless, incompetent or irresponsible bailee.[5] Absent a showing of agency, or negligent choice of bailee, even an owner in the business of leasing automobiles may not be held liable for the bailee's negligence under the common law.[6]

Although New York formerly recognized these common law principles, that state's legislature has abrogated them to a great extent by the passage of Section 388 of the New York Vehicle and Traffic Law, which provides that:

1. Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner. . . .

3. As used in this section, "owner" shall be as defined in section one

3. *Doran v. Thomsen,* 74 N.J.L. 445, 66 A. 897 (Sup.Ct.1907); *Headman v. Berman Leasing Co.,* 352 F.Supp. 211 (E.D.Pa.1972); *Wallace v. Frieday,* 331 F.Supp. 420 (W.D. Pa.1971); *Double v. Myers,* 305 Pa. 266, 157 A. 610 (1931).

4. *Maffatone v. Woodson,* 99 N.J.Super. 559, 240 A.2d 693 (App.Div.1968); *Schimek v. Gibb Truck Rental Agency,* 69 N.J.Super. 590, 174 A.2d 641 (App.Div.1961); *Anderson v. Krebs,* 38 D. & C.2d 100 (Pa.1964);

*Double v. Myers,* 305 Pa. 266, 157 A. 610 (1931); *Henry v. Beck,* 154 Pa.Super. 585, 36 A.2d 734 (1944).

5. *Schimek v. Gibb Truck Rental Agency,* 69 N.J.Super. 590, 174 A.2d 641 (App.Div.1961); *Littles v. Avis Rent-A-Car System,* 433 Pa. 72, 248 A.2d 837 (1967); *Delair v. McAdoo,* 324 Pa. 392, 188 A. 181 (1936).

6. *Zuppa v. Hertz Corp.,* 111 N.J.Super. 419, 268 A.2d 364 (Essex County Court, 1970).

hundred twenty-eight of this chapter, and their liability under this section shall be joint and several.

Section 128 of the Vehicle and Traffic Law defines "owner" as:

A person, other than a lien holder, having the property in or title to a vehicle. The term includes a person entitled to the use and possession of a vehicle subject to a security interest in another person and also includes any lessee or bailee of a motor vehicle or motorcycle having the exclusive use thereof, under a lease or otherwise, for a period greater than thirty days.

The purpose of Section 388 is to change the common law rule by making the owner liable for the negligence of a person legally operating the vehicle with the express or implied permission of the owner. *Report of the New York Law Revision Commission,* 587, 602 (1958). Under the common law, an owner could escape liability merely by asserting that at the time of the accident, his car was not being used in his business, or was used without his authority. If the driver was insolvent or unknown, the injured plaintiff could obtain no recovery for his loss. The resultant hardship inflicted upon the innocent victim because of the owner's non-liability was one of the evils Section 388 was designed to prevent. *Plaumbo v. Ryan,* 213 App.Div. 517, 210 N.Y.S. 225 (1925). In short, the legislature's action evidenced concern for injured plaintiffs with no real remedy against irresponsible drivers who were mere incidental bailees. Thus, "the main objective of the statute was to provide recourse to an injured party against a person, financially able to respond, without whose conduct in permitting use of the vehicle the accident would not have happened." *Report of the New York Law Revision Commission* at 593 (1958); *Devitt v. Continental Casualty Company,* 245 A.D. 115, 281 N.Y.S. 336, *reversed on other grounds,* 269 N.Y. 474, 199 N.E. 765 (1935); *Continental Auto Lease Corp. v. Campbell,* 19 N.Y.

2d 350, 280 N.Y.S.2d 123, 227 N.E.2d 28 (1967).

Section 388 was not only designed to protect injured plaintiffs from uncompensated injuries, however, It was also intended to increase the responsibility of automobile owners for the operation of their vehicles, *Aarons v. Standard Varnish Works,* 163 Misc. 84, 296 N.Y.S. 312 *affirmed,* 254 A.D. 560, 3 N.Y.S. 2d 110 (1937), and "to discourage owners from lending their vehicles to incompetent or irresponsible drivers." *Report of the New York Law Revision Commission* at 593 (1958).

In holding that the owner/lessor of an automobile was liable for the negligence of the driver/lessee, the court in *Platt v. Hertz Corporation,* 64 Misc.2d 752, 315 N.Y.S.2d 780 (Civ.Ct., N.Y.C.), *reversed on other grounds,* 66 Misc.2d 505, 321 N.Y.S.2d 613 (1970), emphasized that:

[Section 388] reflects an overpowering public interest to give an injured member of the public a right of action against the owner of a vehicle who is primarily responsible for placing it on the highway. It should certainly apply to owners engaged in the car rental business who clearly make no investigation of the capacity or sense of responsibility of the lessee other than the production of the driver's license or a deposit at the rental counter.

The tremendous growth in the number of cars on the highways and in the car rental business which greatly adds to the number requires the application of Section 388 so as to achieve its intended purpose; namely to make owners who put vehicles on the highways responsible for accidents caused by negligence in the operation of those vehicles.

64 Misc.2d at 756, 315 N.Y.S.2d at 784.

The New York Legislature has effectuated its dual policy of (1) providing injured plaintiffs with a financially responsible defendant, and (2) imposing a high degree of responsibility on

owners who allow others to operate their vehicles, by enacting an all-embracing mandatory insurance scheme.[7] New York Vehicle and Traffic Law § 338(4) expressly requires all owners to carry insurance for any liability which may arise out of § 388(1). Of further relevance here is New York Insurance Law § 167(2), which requires that all personal injury or damage liability insurance policies issued in New York shall cover liability arising from the *ownership*, maintenance or use of any motor vehicle. This coverage expressly includes negligence in the operation or use of the vehicle by any person operating or using it with the permission of the named insured. The Legislature's sweeping statutory plan is capped by the requirement of § 311(4)(a), Vehicle and Traffic Law, which mandates that every owner's insurance coverage shall extend to claims arising out of the ownership, use or operation of the vehicle "within the state of New York, or elsewhere in the United States in North America or the Dominion of Canada."

Taken as a whole, it is obvious that the New York Legislature has, with painstaking precision, developed a comprehensive policy with respect to the liability of automobile owners. This policy is based not only on the idea that innocent plaintiffs should have a financially responsible source from which to recover, but also on the recognition that automobile ownership per se carries a heavy burden of responsibility. In order to implement this policy, the Legislature requires owners to purchase insurance sufficient to meet the demands of this responsibility, irregardless of where that demand is made. In this regard, the statement of Judge Keating in *Tooker v.*

*Lopez,* 24 N.Y.2d 569, 577, 301 N.Y.S. 2d 519, 525, 249 N.E.2d 394, 399 (1969) is particularly appropriate.

Indeed, the Legislature, in requiring that insurance policies cover liability for injuries regardless of where the accident takes place (Vehicle & Traffic Law § 311, subd. 4) has evinced commendable concern not only for residents of this State, but residents of other States who may be injured as a result of the activities of New York residents.

### III

Having examined the variance in law as to an automobile owner's liability, it is the duty of this Court to evaluate the contacts and policies of the competing states in order to determine which law shall be applied on this issue.

Preliminarily, it must be noted that the laws of Pennsylvania and New Jersey are identical, since both observe the common law rules. There is thus a false conflict as to them, since, no matter which state's law is chosen, the result will be identical.

Pennsylvania is the state of the plaintiffs' domicile. As such, that state surely has an interest in providing for their recovery in this Court, since otherwise plaintiffs may become dependent upon the Commonwealth of Pennsylvania for support, but it has no other interest in having its law applied in this case. Indeed, the application of Pennsylvania law on this issue would undoubtedly preclude plaintiff's recovery from Avis and Chrysler, since no proof of agency, or negligent choice of lessee has been offered to support common law liability. Such a result would hardly be compatible with that state's interest in protecting

---

7. N.Y. Vehicle & Traffic Law § 310(2) (McKinney 1970) provides: The legislature is concerned over the rising toll of motor vehicle accidents and the suffering and loss thereby inflicted. The legislature determines that it is a matter of grave concern that motorists shall be financially able to respond in damages for their negligent acts, so that innocent victims of motor vehicle accidents may be rec-

ompensed for the injury and financial loss inflicted upon them. The legislature finds and declares that the public interest can best be served in satisfying the insurance requirements of this article by private enterprise operating in a competitive market to provide proof of financial security through the methods prescribed herein.

its residents. Pennsylvania's contacts are miniscule, and insufficient to mandate application of Pennsylvania law.

New Jersey is undoubtly interested in applying its law whenever an accident occurs within its borders. Each state is desirous of promoting orderly and safe travel on its roads and highways, in order to protect the lives and the property of its citizens. This is especially true in New Jersey, since by virtue of its unique geographical location, its highways are among the most heavily traveled in the nation.

Had the issue currently before this Court involved the *conduct* of drivers within this state, it is clear that New Jersey would have the paramount interest in seeing its rules of the road apply because it has an undisputed right to regulate conduct or actions performed within its territory. The issue *sub judice,* however, relates not to the question of substantive negligence, or *how* the defendant was driving, but solely to the issue of a vehicle owner's liability for that negligence, if any.

New Jersey's only real contact with this issue is the fact that the accident occurred here. No New Jersey residents were injured, nor were any vehicles registered in this state involved. New Jersey thus has no interest in applying its law; indeed, it has deferred to the law of New York on this very issue under similar circumstances.

In *Maffatone v. Woodson,* 99 N.J. Super. 559, 240 A.2d 693 (App.Div.), *cert. denied,* 51 N.J. 577, 242 A.2d 381 (1968), all the parties were New York

domiciliaries and the automobile in question was registered and insured in New York. The owner loaned the car to the driver, who was subsequently involved in an accident in New Jersey in which the driver's wife, a passenger, was killed. A wrongful death suit against the owner was filed in the New Jersey state court. The decedent wife's representative claimed that New York Section 388 applied, while the owner/defendant tendered New Jersey law. In holding that New York law was applicable, the Court stated that the "New Jersey contacts were adventitious and limited" since "there were no New Jersey residents with interests to be protected by the law of the forum State, whereas New York had an interest in the adequate compensation for the wrongful death of a New York resident." 99 N.J.Super. at 563, 240 A.2d at 696.

The highest court of New York, when faced with a strikingly similar factual situation, arrived at the same conclusion. In *Farber v. Smolack,* 20 N.Y.2d 198, 282 N.Y.S.2d 248, 229 N.E.2d 36 (1967), a New York registered automobile was involved in an accident in North Carolina. The vehicle had been loaned by its owner to his brother and family for a round-trip drive to Florida. Owner, driver and family were all New York domiciliaries. The driver's wife was killed in the accident, and her representative sued the owner under Section 388. The Court, terming the locality of the North Carolina accident the "merest lateral chance", applied Section 388 even though the accident occurred outside of New York,[8] since this "transitory tort"

---

8. Prior to being amended in 1958, N.Y. Vehicle & Traffic Law § 388 applied to vehicles "used or operated upon a public highway." *Report of the New York Law Revision Commission* at 612 (1958). Since an owner's liability under § 388 was in derogation of the common law, the scope of liability was strictly construed by the courts. As a consequence, courts took the language of the statute literally, and consistently denied owner liability when an accident occurred on private property. Owners were not liable, under this construction, for accidents which occurred on private driveways, parking lots, etc. *E. g., Sylvester v. Brockway Motor Truck Corp.,* 232 A.D. 364, 250 N.Y.S. 35 (1931) ; *Weeks v. Byrnes,* 33 N.Y.S.2d 65 (Co.Ct.1942) ; *Weinstein v. McKenzie,* 117 Misc. 451, 30 N. Y.S.2d 733 (1941). It was to remedy this situation, and broaden liability to include accidents on both public and private property, that "in this state" was substituted for "upon a public highway." *Report of N. Y. Law Commission,* 589–590 (1958) ; *Farber v. Smolack,* 20 N.Y.2d 198, 282 N.Y.S.2d 248, 229 N.E.2d 36 (1967).

arose entirely from New York relationships which should therefore be governed by New York Law. 20 N.Y.2d at 203, 282 N.Y.S.2d 248, 229 N.E.2d 36.

It is arguable that in both *Maffatone* and *Farber*, New York Law was applied because of New York's overwhelming abundance of contacts. In both cases, New York vehicles were involved, and New York plaintiffs deserved to be protected from New York defendants, despite the non-New York situs of each accident. In the instant matter, however, New York might arguably have no interest in compensating Pennsylvania plaintiffs. Such an argument, however, ignores New York's comprehensive scheme for providing financially responsible owner/defendants from whom all innocent plaintiffs may seek recovery, regardless of the situs of the accident.

With respect to Section 388, the New York courts have "made it quite clear that in an appropriate case (New York) statutory and constitutional provisions will be applied to govern the rights of the parties even where the conduct giving rise to the litigation occurs outside this State." *Miller v. Miller, supra,* 22 N.Y.2d at 19 n. 2, 290 N.Y.S.2d at 739,

237 N.E.2d at 881, citing *Farber v. Smolack, supra.*[9] In *Miller,* the New York Court of Appeals expressly approved of the result reached by the New Jersey court in *Maffatone v. Woodson, supra,* where Section 388 was applied to an accident which occurred in New Jersey.

In a case bearing a remarkable factual resemblance to the instant one, a Massachusetts plaintiff, whose car was registered in Massachusetts, was injured in a New Jersey accident by an automobile registered in New York and owned by a car rental agency doing business in New York. Section 388 was applied by the New York court on the issue of the rental agency/owner's liability. *Johnson v. Hertz Corp.,* 315 F.Supp. 302 (S.D.N.Y. 1970). The Court held that, under a governmental interest analysis, "New York has the predominant interest in this issue" because "the automobile insurance laws of New York . . . express a policy aimed at protecting innocent victims of New York vehicle registrants, whether injured or harmed in New York State or elsewhere." 315 F.Supp. at 304–305. The fact that plaintiff was a resident of Massachusetts,

---

The *Farber* decision thus holds that the phrase "in this state" was not meant to restrict § 388 liability solely to accidents which occur in New York, and expressly overruled cases, such as *Cherwein v. Geiter,* 272 N.Y. 165, 5 N.E.2d 185 (1936) and *Miranda v. LoCurto,* 249 N.Y. 191, 163 N.E. 557 (1928) which had denied the extraterritorial application of § 388. "It is clear that in adding the words 'in this state' to the predecessor of subdivision 1 of section 388 . . . the Legislature was not concerned with extraterritorial effect." 282 N.Y.S.2d at 253, 229 N.E.2d at 39.

9. This statement, along with Judge Keating's "commendable concern" comments in *Tooker v. Lopez, supra,* page 137, must be read along with *Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972), wherein the court held that the N.Y. Vehicle & Traffic Law § 311(4)(a) *supra,* page 137, requirement of compulsory insurance was merely to provide a financial guarantee for the payment of claims due to existing liability, and not to create new liability of its own accord. In that case, the defendant, a New

York resident whose vehicle was registered and insured in New York, picked up the plaintiff's decedent, an Ontario resident, in Ontario. Death occurred as the result of an accident in Ontario. Suit was brought in New York, which has no guest statute, but the court applied the Ontario guest statute to deny recovery, on the basis that New York had no interest in ignoring Ontario public policy when the accident occurred in Ontario and the victim resided in that province.

The instant case is distinguishable from *Neumeier,* however, for policy considerations which come into play in guest statute cases are often inapplicable in a § 388 case. Further, the relationship of the parties in *Neumeier* was centered in Ontario, and in that respect the accident there was not fortuitous. However, Smith rented the Avis sedan in New York and was to return it there, establishing a relationship clearly centered in New York. In any event, this Court recognizes that § 311(4)(a) does not in itself create liability, but is nevertheless helpful in determining upon whom liability shall be placed.

and not New York, caused the Court little consternation in arriving at its result.

A similar conclusion was reached by a New Jersey court in *Van Dyke v. Bolves*, 107 N.J.Super. 338, 258 A.2d 372 (App.Div.1969). There, plaintiff Van Dyke was a New Jersey resident whose automobile was registered in that state. Defendant Bolves resided and conducted his business in New York. Bolves' vehicle was registered in New York. An employee of Bolves, also a New York resident, drove that vehicle to New Jersey where he collided with the plaintiff. The Court held that Bolves' liability as vehicle owner would be determined under Section 388, as would the issue of whether his employee was driving with the "permission" of the owner/employer. This result was mandated because "the fact that New Jersey was the situs of the accident was purely fortuitous." 107 N.J.Super. at 344, 258 A.2d at 375.

Presumably, New Jersey's sole interest here was in providing adequate recovery for its injured resident. As such, New Jersey had no interest in applying its own law, under which Van Dyke may have been denied any recovery against Bolves. On the other hand, the Court recognized that New York has an interest in regulating the relationship between an automobile owner and his lendee, and Section 388 is one of the means by which such regulation is accomplished.

One further case which merits this Court's consideration is *Rogers v. U-Haul Co.*, 67 Misc.2d 805, 325 N.Y.S. 2d 195 (1971), *rev'd.* 41 A.D.2d 834, 342 N.Y.S.2d 158 (1973). In this case, May, a New York resident, leased a vehicle from the U-Haul Co., which operates an auto, truck and trailer leasing business in New York. The leasing arrangement, consummated in New York, was for a one-way trip from New York to Tuscaloosa, Alabama. The leased vehicle was registered in the District of Columbia. Plaintiff's decedent, a resident of Ala-

bama and a passenger in the leased vehicle driven by May, was killed in an accident in Pennsylvania en route. A wrongful death action filed in New York presented the Court with the question of whether New York Section 388 or Pennsylvania common law should be applied in determining U-Haul's liability. The trial court, relying on *Johnson v. Hertz Corp., supra*, applied Section 388.

The Appellate Division, however, reversed upon its finding that:

> This case calls for application of the normal rule, i. e., the rule of the State where the accident occurred, Pennsylvania, and the substantive law purposes of the involved jurisdictions will *not* be advanced by displacing the normal rule.

342 N.Y.S.2d at 160. The court based its conclusion, that New York policy with respect to owner liability should not be applied, on the following factors:

> The owner is not a New York resident, the automobile is not registered in New York and therefore not subject to our State's compulsory insurance provisions, the accident did not occur in New York and the injured party is not a resident of New York.

*Id.* The Appellate Court held, in effect, that when such "contacts", or perhaps "absence of contacts", are present, the rule of *Farber v. Smolack, supra,* which allowed recovery under Section 388 for accidents outside New York, is inapplicable.

The *Rogers* decision, however, appears to have been premised upon erroneous conclusions of New York law, and has been criticized by at least one noteworthy commentator, who asserts that the Appellate Division distinguished *Farber v. Smolack* on "insubstantial grounds." Herzog, *Conflict of Laws, 1973 Survey of N.Y. Law*, 25 *Syracuse L.Rev.* 11, 32–33 (1974). For example, the state of registration of a vehicle should make little difference when the defendant is a rental agency. As Professor Herzog points out, "car rental agencies encourage one-way rentals; therefore, they

may have vehicles in their 'stable' of cars that have come from elsewhere. This should not reduce the obligations of rental agencies." The operative factor, upon which the Court's attention should focus, is the relationship between lessor and lessee which gives rise to Section 388 liability, not merely the place where a particular vehicle is registered.

Furthermore, the statutory obligatory financial security provisions applicable to car rental agencies make no mention whatsoever of the place of registration of the vehicles rented by them. New York Vehicle & Traffic Law § 370(3). In fact, the New York compulsory insurance law is nowhere made applicable solely to New York-registered vehicles. New York Vehicle & Traffic Law § 318 (4).[10] See *State of New York Insurance Dept., Automobile Insurance . . . For Whose Benefit?* 98 (1970). The statement of the *Rogers* court, to the effect that New York compulsory insurance law is inapplicable to vehicles registered elsewhere, thus appears to be incorrect.

Additionally, the Court's characterization of U-Haul Co. as a "non-resident" of New York appears to be an irrelevant consideration. Regardless of where an entity is incorporated, it is elementary that any state within which it transacts business has an interest in regulating business relationships which arise within that state. This should particularly be the case where a nationwide auto rental firm is involved.

Eliminating these discredited "non-contacts" considered in *Rogers*, all that remains in that case is an accident outside of New York, a deceased non-resident of New York, and a rental agreement entered into in New York between a rental agency and a third party. These remnants are essentially identical to the situations in *Van Dyke v. Bolves* and *Johnson v. Hertz Corp.*, in both of which Section 388 was applied.

In the case currently under consideration, this Court concludes that New York has the superior interest in applying its law to the issue of the alleged liability of Chrysler and Avis. Apart from the fact that Pennsylvania and New Jersey have evinced no interest whatsoever in applying their laws, the quality of New York's contacts, together with its comprehensive policy of owner liability, mandate this result. Indeed, a contrary result would only serve to undercut New York's well-defined policy by allowing an owner to escape liability merely on account of a "fortuitous" circumstance. *Pahmer v. Hertz Corp.*, 36 A.D.2d 252, 319 N.Y.S.2d 949 (1971).

New York is the state where the defendant's vehicle was registered, and it was the owner's statutorily-imposed duty to carry insurance to cover this exact situation. New York Vehicle and Traffic Law, §§ 310–312, 388. Further, the vehicle was leased in New York from Chrysler to Hertz, and from Hertz to Smith. New York alone has an interest in regulating these transactions and relationships under the facts of this case. See *Van Dyke v. Bolves, supra*, 107 N.J. Super. at 345, 258 A.2d 372.

As previously stated, this Court is not engaged in a mere contact counting contest, but in an evaluation of which governmental policy is of such a compelling nature that the law espousing that policy must be applied to a given situation. Whether or not plaintiffs, the Whites, are citizens of New York is of no consequence here, since, as already determined, New York is the only state with any interest

---

10. N.Y. Vehicle & Traffic Law § 318(4) (McKinney 1970) provides:
(a) The commission, upon receipt of evidence that the owner of a motor vehicle not registered in this state has operated or permitted such motor vehicle to be operated upon the public highways of this state while proof of financial security was not in effect with respect to such vehicle, shall revoke such person's privilege to operate any motor vehicle in this state and the privilege of the operation within this state of any motor vehicle owned by him.

in the outcome of the liability issue. *Johnson v. Hertz, supra* at 304; *Miller v. Miller, supra,* 22 N.Y.2d at 19 n. 2, 290 N.Y.S.2d 734, 237 N.E.2d 877; *Tooker v. Lopez, supra,* 24 N.Y.2d at 577, 301 N.Y.S.2d 519, 249 N.E.2d 394; *Pahmer v. Hertz Corp., supra.*

It is also of no consequence that the liability of the owner for acts committed outside of New York may not have been within the contemplation or expectation of the parties to these rental agreements. Consideration of the supposed expectation of the parties in a choice of law context is, at best, a fruitless exercise.

> Though our nation is divided into fifty-one separate legal systems, our people act most [of] the time as if they lived in a single one. . . . [They suffer from a] chronic failure to take account of differences in state laws. . . . [f]ew speculations are more slippery than assessing the expectations of parties as to the laws applicable to their activities, and especially is this true when the expectations relate to the law of torts.

*Miller v. Miller,* 22 N.Y.2d 12, 20, 290 N.Y.S.2d 734, 741, 237 N.E.2d 877, 882 (1968), *citing* Cavers, Choice of Law Process, 119.

Additionally, the New York Legislature has rendered the consideration of the parties' supposed expectations even more irrelevant in the present situation, since it has expressly chosen, by way of §§ 310–312, to compel vehicle owners to provide a fund from which injured plaintiffs may recover. It is thus a logical inference that, by purchasing New York insurance as required, vehicle owners fully intend to protect against negligent injury and secure indemnity for liability wherever an accident may occur, *Tooker v. Lopez, supra,* 24 N.Y.2d at 578, 301 N.Y.S.2d 519, 249 N.E.2d 394, *Pahmer v. Hertz Corp., supra,* be it New York, the other states of the Union, or even the Dominion of Canada. New York Vehicle and Traffic Law, § 311(4)(a).[11]

Application of New York law to this issue will in no way encourage future litigants to "shop" for a New Jersey forum. Plaintiffs properly brought this suit in New Jersey, the district "in which the claim arose", pursuant to 28 U.S.C. § 1391. Suit could have been filed in New York, where presumably § 388 would also have been applied. As such, plaintiffs did not avail themselves of this forum merely to benefit from any particular law, but did so perhaps because New Jersey, as the site of the accident, is most convenient for both the parties and witnesses who may be called upon to give testimony.

At trial, then, § 388 of the New York Vehicle and Traffic Law will be the

---

11. That the parties' expectations do not always go hand-in-hand with due process of law is illustrated by *Young v. Masci,* 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158 (1933). In that case, a New Jersey vehicle owner loaned his car to an operator who subsequently was involved in a collision in New York. Plaintiff, a resident of New York, sued in New Jersey for personal injuries. Justice Brandeis, for the Court, held that the predecessor to § 388 could be applied to the New Jersey owner even though he never entered New York.

> No good reason is suggested why, where there is permission to take the automobile into a state for use upon its highways, personal liability should not be imposed upon the owner in case of injury inflicted there

by the driver's negligence, regardless of the fact that the owner is a citizen and resident of another state.

289 U.S. at 260, 53 S.Ct. at 602.

If, as *Young* indicates, § 388 liability may be applied consistent with the Due Process clause of the Fourteenth Amendment, to an out of state owner, surely a New York owner may be held responsible for an accident occurring in New Jersey. "A person who sets in motion in one state the means by which injury is inflicted in another may, consistently with the due process clause, be made liable for that injury whether the means employed be a responsible agent or an irresponsible instrument." 289 U.S. at 258, 53 S.Ct. at 601.

standard against which the liability of Chrysler and Avis will be measured.

## IV

Chrysler and Avis assert that summary judgment in their favor is proper even if New York law is applied. Specifically, their argument is two-fold:

A. § 388 owner liability is "auxiliary", and only applicable where the alleged negligent driver is unknown or beyond the jurisdiction of the Court.

B. Both Chrysler and Avis cannot be "owners" for the purposes of § 388.

This Court finds no merit to either of these contentions.

A. Avis and Chrysler take the position that the owner's liability under § 388 is merely "auxiliary", and may only be asserted when the driver is judgment-proof, unknown, or not amenable to the Court's jurisdiction.

This is clearly not the case under New York law. Addressing this precise issue, the Court in *Sarine v. American Lumberman's Mutual Casualty Co.*, 258 A.D. 653, 17 N.Y.S.2d 754 (1940), held that an owner's liability is akin to *respondeat superior*, and that both owner and driver are each liable in full under § 388. 258 A.D. at 655, 17 N.Y.S.2d 754. On remand, the trial court added that when the operator of an automobile is negligent, he and the owner are joint tort-feasors and as such are jointly and severally liable. *Sarine v. Maher*, 187 Misc. 199, 63 N.Y.S.2d 241 (1946). Owner and operator may be sued jointly or severally, but plaintiff is, of course, entitled to the satisfaction of only one judgment. *Accord, American Surety Co. v. Diamond*, 1 N.Y.2d 594, 154 N.Y.S.2d 918, 136 N.E.2d 876 (1956). *Cf., Plath v. Justus*, 33 A.D.2d 833, 306 N.Y.S.2d 80 (1964), *affd.* 28 N.Y.2d 16, 319 N.Y.S.2d 433, 268 N.E.2d 117 (1971).

B. Finally, Avis and Chrysler submit that both cannot be "owners" for purposes of § 388. An "Owner", as defined by New York Vehicle and Traffic Law, § 128, *supra*, generally includes one having "title" to a vehicle, and "also includes any lessee or bailee of a motor vehicle . . . having the exclusive use thereof, under a lease or otherwise, for a period greater than thirty days."

Chrysler is the undisputed title-holder of the vehicle in question, and as such is unquestionably an "owner" under § 128 and § 388.

Avis leased the vehicle from Chrysler. The record before this Court does not support a finding that the Chrysler-Avis lease was for less than 30 days. Avis cannot escape exposure on this basis. See *Carasso v. Sternberg*, 63 Misc.2d 861, 313 N.Y.S.2d 851 (1970).

In *Aetna Casualty Co. v. World-Wide Rent-A-Car*, 52 Misc.2d 552, 276 N.Y.S. 2d 401 (1966), it was held that both the registered owner of a vehicle, as well as the lessee, may be held liable under § 388. The lessee was "also regarded as the owner with respect to liability for negligence," such ownership extending to the lessee by virtue of its lease. *Id.* For purposes of civil liability, then, both lessor and lessee are "owners" who may, consistent with § 388, be found jointly and severally liable. *Location Auto Leasing Corp. v. Lembo Corp.*, 62 Misc.2d 856, 310 N.Y.S.2d 365 (1970).

## V

For the reasons stated herein, the motions of defendants, Avis and Chrysler for summary judgment are denied.