694 A.2d 1072

JODI GREENFEDER, PLAINTIFF–APPELLANT, v. JASON J. JAR-
VIS AND FORD MOTOR CREDIT COMPANY, B.H.S.C., INC., T/A
BIRCH HILL NITE CLUB, BRIERWOOD MANOR, INC., T/A
BIRCH HILL NITE CLUB, DEFENDANTS–THIRD PARTY
PLAINTIFFS–RESPONDENT, v. STEPHANIE A. MAGNONE
AND MATTEO MAGNONE, THIRD PARTY DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued May 29, 1997—Decided June 19, 1997.

154

Before Judges SHEBELL, BAIME and BRAITHWAITE.

*Robert G. Goodman* argued the cause for appellant (*Palmisano & Goodman, P.A.*, attorneys; *Mr. Goodman*, on the briefs).

*Brian W. McAlindin* argued the cause for respondent, Ford Motor Credit Company (*Wilson, Elser, Moskowitz, Edelman & Dicker*, attorneys; *Mr. McAlindin*, of counsel; *Mr. McAlindin* and *John B. Monahan*, on the brief).

No briefs filed on behalf of Jason J. Jarvis, Stephanie A. Magnone and Matteo Magnone.

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

On November 21, 1993, plaintiff, Jodi Greenfeder, was a passenger in a vehicle operated by defendant, Stephanie Magnone, and owned by Matteo Magnone, when it was in a collision with a vehicle operated on Route 9 in Old Bridge by defendant, Jason J. Jarvis. Jarvis leased the vehicle from defendant, Ford Motor Credit Company (FMCC).

On December 28, 1993, Greenfeder filed this action against Jarvis, FMCC, and the Magnones. Jarvis answered the complaint and filed a third party complaint for contribution against the Magnones. Plaintiff thereafter amended her complaint to add the Magnones as direct defendants, and also named B.H.S.A., Inc., t/a as Birch Hill Night Club. An amended complaint later corrected the name of the night club operator to Brierwood Manor, Inc.

FMCC, as lessor of the Jarvis vehicle, moved for summary judgment claiming that neither the law of New Jersey nor Massachusetts would hold it liable as owner except under principles of master servant, which did not apply in this case. Judge Kravarik, however, applied Connecticut law and denied summary judgment by order dated March 19, 1996.

Trial of the action was bifurcated as to liability and damages. Judge Corodemus presided over the jury trial as to liability, which commenced on March 31, 1996. At the conclusion of the plaintiff's case, FMCC's motion for judgment was denied. The jury returned a verdict on April 2, 1996, finding Jarvis 100% negligent and FMCC liable as lessor.

FMCC and Jarvis filed separate motions for judgment notwithstanding the verdict (NOV), or, alternatively, for a new trial. On April 26, 1996, while the damages trial was under way, Judge Kravarik reconsidered his denial of FMCC's earlier summary judgment motion and held that Massachusetts law applied. Therefore, summary judgment was granted in favor of FMCC.

The damages trial was held and a jury verdict of $1,000,000 was returned on April 29, 1996, against Jarvis. On June 6, 1996, the motions for judgment NOV or new trial by FMCC and Jarvis as to liability were denied. Jarvis's motion for new trial as to damages was also denied.

Plaintiff appeals solely as to the grant of summary judgment to FMCC, arguing the following:

POINT I
CONNECTICUT LAW IS THE APPROPRIATE LAW TO APPLY THIS CONFLICT OF LAW ANALYSIS
POINT II
THE SUBJECT LEASED VEHICLE OPERATED BY DEFENDANT, JARVIS AND OWNED BY DEFENDANT, FORD MOTOR CREDIT COMPANY, WAS REQUIRED TO BE REGISTERED IN THE STATE OF CONNECTICUT ON THE DATE OF THE SUBJECT ACCIDENT
POINT III
THE STATE OF NEW JERSEY REQUIRES THE OWNER OF A MOTOR VEHICLE TO PROVIDE LIABILITY COVERAGE REGARDLESS OF WHETHER A LESSEE HAS ALSO PROVIDED LIABILITY COVERAGE
POINT IV
THE MOTION JUDGE ERRONEOUSLY REVERSED HIS PRIOR ORDER APPLYING THE LAW OF THE STATE OF CONNECTICUT TO THE ISSUES HEREIN

Initially, Judge Kravarik denied FMCC's motion for summary judgment wherein FMCC urged that, as lessor, it was not vicariously liable under either Massachusetts or New Jersey law. He found that FMCC was vicariously liable under Connecticut law, which he found to be the law applicable to the case based on Jarvis's alleged residence in Connecticut at the time of the accident and the location of FMCC's branch office in Connecticut. While the damages trial was proceeding before another judge, he reconsidered his denial and held that Massachusetts law applied.

He, therefore, granted summary judgment in favor of FMCC and, based on that ruling, the judge presiding over the damages trial instructed the jury that FMCC would no longer be participating in the case.

Judge Kravarik noted that his earlier decision had been a close call, but concluded that new evidence that Jarvis was a resident of Massachusetts at the time of the accident tipped Massachusetts' interest over the interest of Connecticut. He pointed out that the registration, insurance, original leasing, and residence of Jarvis were all in Massachusetts. He compared this to the interest of Connecticut based on the assignment of the lease to FMCC in New Haven, Connecticut, and concluded that the real interest was that of Massachusetts.

Jarvis leased a new 1993 Ford passenger automobile on January 7, 1993, from Mutual Ford Inc., a dealership located in Springfield, Massachusetts. The lease was initially executed by Mutual Ford Inc., as lessor, and Jarvis, as lessee. However, the lease stated that the lessee understood that the lessor would assign the lease to FMCC. The lease did not indicate what office of FMCC would handle the assignment. On the same day it was executed, the lease was purchased by FMCC through one of its branch offices in North Haven, Connecticut. FMCC is incorporated in Delaware and its principal place of business is Michigan.

FMCC applied for a registration and titled the vehicle with the Massachusetts Registry of Motor Vehicles. The registration application states that the vehicle will be principally garaged in Springfield, Massachusetts. The vehicle was insured in Massachusetts by Metropolitan Property and Casualty Insurance Company.

The lease named Jason Jarvis as lessee and gave his address as 16 Channing Road, Springfield, Massachusetts. Jarvis told the police on the date of the accident that he lived in New Jersey, although his Massachusetts driver's license gave the Massachusetts address. During his initial deposition and interrogatories, Jarvis said he lived in Connecticut at the time of the accident.

However, when FMCC's counsel met with Jarvis, it was established that Jarvis had not moved to Connecticut with his parents until a few months after the accident. Judge Kravarik was satisfied that Jarvis had been a Massachusetts resident at the time of the accident. That Jarvis was a resident of Massachusetts is supported by the record, and the finding should not be disturbed. *State v. Johnson*, 42 *N.J.* 146, 162, 199 *A.*2d 809 (1964); *Rova Farms Resort v. Investors Ins. Co.*, 65 *N.J.* 474, 484, 323 *A.*2d 495 (1974).

Paragraph 27 of the lease agreement between Jarvis and Mutual Ford, Inc. states that the lessee "will not use or permit the use of the Vehicle (i) outside the state where the Vehicle was first titled and/or registered for more than 30 days without the Lessor's and Ford Credit's prior written consent." Paragraph 31 provides as follows:

Except as otherwise provided by the law of the state where the Lessee resides, the law that will apply to this Lease is the law of the state where the Lessor's place of business is as set forth on the front of the Lease.

The Lessor's name and address appeared on the front of the lease as "Mutual Ford, Inc., 1535 Bay Street, Springfield, MA 01109."

In choice-of-law decisions, New Jersey applies a flexible "governmental-interest" standard. *Gantes v. Kason Corp.*, 145 *N.J.* 478, 484, 679 *A.*2d 106 (1996). In *Veazey v. Doremus*, 103 *N.J.* 244, 248, 510 *A.*2d 1187 (1986), the Court in discussing the "governmental-interest" analysis stated:

Under that analysis, the determinative law is that of the state with the greatest interest in governing the particular issue. *See, e.g., White v. Smith*, 398 *F.Supp.* 130, 134 (D.N.J.1975); *McSwain v. McSwain*, 420 *Pa.* 86, 94, 215 *A.*2d 677, 682 (1966). The first step in the analysis is to determine whether a conflict exists between the law of the interested states. Any such conflict is to be determined on an issue-by-issue basis. *See, e.g., White v. Smith, supra*, 398 *F.Supp.* at 134; R. Leflar, *American Conflicts Law* § 92, at 185 (3rd ed.1977); R. Weintraub, *Commentary on the Conflict of Laws* § 6.9, at 285 (2d ed.1980). If an actual conflict exists, the next step is to identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties. *See, e.g., Henry v. Richardson–Merrell, Inc.*, 508 *F.*2d 28, 32 (3rd Cir.1975); *White v. Smith, supra*, 398 *F.Supp.* at 134–35; *Schwartz v. Schwartz*, 103 *Ariz.* 562, 564, 447 *P.*2d 254, 256 (1968); *Pfau v. Trent Aluminum Co., supra*, 55 *N.J.* at 516–23, 263 *A.*2d 129. If a state's contacts are not related to

the polices underlying its law, then that state does not possess an interest in having its law apply. *See Pfau v. Trent Aluminum Co., supra,* 55 *N.J.* at 521–22, 263 *A.*2d 129; *Mellk v. Sarahson, supra,* 49 *N.J.* at 230, 229 *A.*2d 625. Consequently, the qualitative, not the quantitative, nature of a state's contacts ultimately determines whether its law should apply. *See Henry v. Richardson–Merrell, Inc., supra,* 508 *F.*2d at 32; *White v. Smith, supra,* 398 *F.Supp.* at 134.

■ There is a clear conflict between the law of Connecticut, and the law of Massachusetts and New Jersey. Massachusetts, like New Jersey, follows the common law in that the negligence of an automobile operator is imputed to the lessor only if, at the time of the accident, the relationship of the operator and the lessor was that of master and servant. *Cheek v. Econo–Car Rental Sys.,* 393 *Mass.* 660, 662, 473 *N.E.*2d 659, 660 (1985); *see also Konick v. Berke, Moore Co.,* 355 *Mass.* 463, 465, 245 *N.E.*2d 750, 751 (1969); *Khoury v. Edison Elec. Illuminating Co.,* 265 *Mass.* 236, 238, 164 *N.E.* 77, 78 (1928).

In contrast, Connecticut has enacted legislation providing for vicarious liability of a lessor for an operator's negligent acts, irrespective of agency. CONN. GEN. STAT. ANN. § 14–154a, provides:

> Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been if he had also been the owner.

■ Having decided that a conflict exists, we next identify the policies underlying the laws of each state and how those policies are affected by each state's contacts to the parties and the litigation. *Veazey, supra,* 103 *N.J.* at 248, 510 *A.*2d 1187; *Haggerty v. Cedeno,* 279 *N.J.Super.* 607, 611–12, 653 *A.*2d 1166 (App. Div.), *certif. denied,* 141 *N.J.* 98, 660 *A.*2d 1197 (1995). Massachusetts follows the common law, and its policy is thus similar to that of New Jersey, which was succinctly stated in *Haggerty:*

> New Jersey's common law rule regarding owner liability is not designed to protect the injured party … or to protect the driver. It is designed to shield an owner from liability in cases in which the owner has not been negligent and in which the culpable driver is not related to the owner in a way that will justify the imposition of vicarious liability under traditional principles of the law of agency or master servant.

[*Haggerty, supra*, 279 *N.J.Super.* at 611–12, 653 *A.*2d 1166.]

Clearly, New Jersey has no interest in shielding an out-of-state owner or lessor from liability, and in any event, it is not argued that New Jersey Law applies. We, therefore, examine the applicability of only Massachusetts and Connecticut law.

Connecticut's statute demonstrates a different policy than that of Massachusetts. The Supreme Court of Connecticut has repeatedly stated its view of the purpose of the statute as follows:

" '[It] cannot be regarded otherwise than as an expression of legislative judgment as to the extent—beyond the limitations of the general principles of respondeat superior and the "family-car doctrine"—to which the owner of a motor vehicle which he entrusts to another should be liable for the acts of the latter.' " We have consistently construed the statute as imposing on one who rents or leases a motor vehicle to another *the same liability as that of its operator*, provided the vehicle, at the time in question, is being operated by one in lawful possession of it pursuant to the terms of the contract of rental. "[B]y virtue of the express terms of the statute the owner-lessor is made the alter ego of the operator so that the latter's acts with respect to the operation of the car ... are in law the acts of the owner-lessor."

[*Gionfriddo v. Avis Rent A Car Sys., Inc.*, 192 *Conn.* 280, 284–85, 472 *A.*2d 306, 308 (1984) (citations omitted); *see also Pedevillano v. Bryon*, 231 *Conn.* 265, 268, 648 *A.*2d 873, 874 (1994); *Levy v. Daniels' U–Drive Auto Renting Co.*, 108 *Conn.* 333, 336–37, 143 *A.* 163 (1928).]

It is of critical importance that the qualitative nature of the contacts be examined to determine whether the policies underlying the different state laws are related to the nature of the contacts in the case. Here, Connecticut's interest does not appear to be profound as its sole contact with the parties is as the State where FMCC, as assignee of the original contract, processed the lease and received payments.

The policy of the Connecticut statute is to act as an incentive to lessors of motor vehicles to lease only to competent individuals in order to further the state's goal of safety upon its highways through its police power. However, the actual leasing transaction occurred at the offices of Ford Mutual, Inc., in Massachusetts. Although the lease was assigned through a branch office of FMCC in Connecticut, FMCC registered the car in Massachusetts. It included on the application the fact that the car was to be principally garaged in Massachusetts, and it obtained

insurance in Massachusetts. Additionally, Jarvis was a resident of Massachusetts and possessed a Massachusetts driver's license.

Connecticut General Statute § 14–15a, entitled "Registration of vehicles leased or rented for use in Connecticut", provides that registration of a vehicle is only required in a leasing situation where it is to primarily be used in Connecticut for a period in excess of 30 days. Thus, Connecticut has not sought to control leased vehicles merely because the lessor has acquired ownership of the lease in that State and/or collects the lease payments there.

This is not a case such as *Gantes v. Kason Corp, supra,* where New Jersey's interest in deterring the manufacture of unsafe products within its own borders was significant enough to warrant application of its limitations law. 145 *N.J.* at 488–93, 679 *A.*2d 106. Connecticut has had no contact with this cause of action, and its contact with the parties is minimal as it relates to use and occupancy of the vehicle. *See id.* at 487, 679 *A.*2d 106.

On these facts, we are unable to conclude that Connecticut had such a pivotal interest in the transaction as to warrant meaningful concern for the safety of its highways. Moreover, we doubt that Connecticut in these circumstances would seek to impose vicarious liability on businesses such as FMCC, thereby causing them to consider another more favorable situs, when the safety of Connecticut highways and its citizens is not implicated.

FMCC, by registering the car in Massachusetts, obtaining insurance in that state, controlling its extended use outside of Massachusetts, and declaring in the lease agreement that Massachusetts law would control, undoubtedly sought to put all on notice as to the law that would govern its relationship with Jarvis.

The significant contact, quantitatively and qualitatively, is overwhelmingly with Massachusetts. We further conclude that the contentions raised by plaintiff in point three are clearly without merit. We, therefore, affirm the Law Division's application of Massachusetts law to the issue of vicarious liability.

Affirmed.